# Illinois Official Reports

## Appellate Court

---

*People v. Grant*, 2014 IL App (1st) 100174-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES GRANT, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-10-0174 |
| Filed | December 15, 2014 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-12104; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Kerry Goettsch, all of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for the People. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Hoffman and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant-appellant Charles Grant was arrested in June 2009 on the front porch of his residence at 10920 South Wabash Avenue, Chicago, Illinois (the Grant residence), after police found him carrying a loaded handgun. The defendant was charged with four counts of violating Illinois's aggravated unlawful use of a weapon (AUUW) statute. 720 ILCS 5/24-1.6(a)(1)-(2), (a)(3)(A), (a)(3)(C) (West 2008). Two of those counts related to the prohibition in section 24-1.6(a)(3)(A) of the Criminal Code of 1961 (720 ILCS 5/24-1.6(a)(3)(A) (West 2008)) against carrying an "uncased, loaded and immediately accessible" firearm. Specifically, count I charged the defendant with carrying such a weapon "at a time when he was not on his own land, abode or fixed place of business" pursuant to section 24-1.6(a)(1), (a)(3)(A), and count III charged the defendant with carrying such a weapon while on a public street in violation of section 24-1.6(a)(2), (a)(3)(A). The remaining two counts against the defendant concerned separate provisions of the AUUW statute which prohibit the carrying of a firearm by one who "has not been issued a currently valid Firearm Owner's Identification Card [(FOID card)]." Count II alleged that the defendant lacked a valid FOID card while carrying a firearm while not on his own land, abode, or place of business in violation of section 24-1.6(a)(1), (a)(3)(C), and count IV alleged that the defendant had carried a firearm on a public street without a FOID card in violation of section 24-1.6(a)(2), (a)(3)(C).

¶ 2    The circuit court of Cook County conducted a bench trial on September 23, 2009. Dan Kasper, the Chicago police officer who arrested the defendant, testified that he and his partner, Officer Mohammad, were on patrol in an unmarked police car on June 19, 2009 when they received a report of "shots fired" in the vicinity of the Grant residence at 10:20 p.m. The officers proceeded to "check[ ] out the neighborhood" of the reported gunfire. As the police car neared the Grant residence, Officer Kasper observed the defendant standing on the sidewalk in front of the residence. When the defendant saw the police car, he turned and ran toward the residence. Officer Kasper saw a handgun in the defendant's hand and exited the police car in pursuit of the defendant. Officer Kasper testified that the defendant ran up the front stairs of the house onto the porch and tried to enter the house. However, Officer Kasper was able to apprehend the defendant on the front porch, where four or five other men were sitting. Officer Kasper recovered a loaded .38-caliber revolver from the defendant's right hand.

¶ 3    The defendant was placed into custody and spoke with the officers after he was read his *Miranda* rights. According to Officer Kasper, the defendant stated he had a handgun for protection because there had been a lot of shooting in the area. The defendant told the officers that he bought the handgun for $75 from a "crack head" about three months earlier. Officer Kasper also testified that he asked the defendant if he had a current valid FOID card, and the defendant responded that he did not. At no point did the defendant present a valid FOID card.

¶ 4    Officer Mohammad's testimony corroborated Officer Kasper's recollection of events. Officer Mohammad testified that he and Officer Kasper responded to a radio call of "shots fired" in the vicinity of the Grant residence. Officer Mohammad testified that he observed the defendant standing on the sidewalk in front of the residence with a handgun in his right hand

and that the defendant turned and ran toward the residence. Officer Mohammad corroborated that Officer Kasper exited the police car, apprehended the defendant on the front porch of the residence, and recovered a handgun from the defendant. The parties stipulated that police recovered a loaded .38-caliber handgun from the defendant.

¶ 5 Junior Grant (Junior), the defendant's younger brother, testified that at 10 p.m. on the night of the defendant's arrest, he, their brother Edward, and two other friends were sitting on the porch of the Grant residence drinking with the defendant. Contrary to the arresting officers' testimony, Junior stated that the defendant was on the porch the whole time and did not go to the sidewalk. According to Junior, the defendant had a cell phone in one hand and a drink in the other. Junior testified that a police officer approached the porch with his gun drawn, searched the defendant, and found a weapon.

¶ 6 The defendant testified that on the evening of his arrest he was on the porch of the Grant residence with his brothers celebrating his brother Edward's birthday. Around 10:20 p.m., the group heard gunshots in the area. The defendant testified that 5 or 10 minutes later, he was talking on his cellular phone when the police "rushed [the] porch." The defendant stated that he was holding his cellular phone in one hand and a beverage in his other hand. The defendant testified that he asked the police if he could go inside the house to get his "ID." The defendant stated that a police officer threw him against a wall, searched him, and found a handgun that he was carrying in his pocket.

¶ 7 The defendant acknowledged in his testimony that he told the police that he purchased the handgun for his own protection because there had been shooting incidents in the neighborhood. The defendant testified that he bought the handgun from a "crack head" for $75. The defendant stated that on the night of his arrest he remained on the porch, was not on the sidewalk, and denied that he had run from the police.

¶ 8 After hearing closing argument from defense counsel, the trial court made a general finding that the defendant was guilty of violating the AUUW statute. On December 21, 2009, the trial judge sentenced the defendant to 18 months of probation, in addition to statutory fines and costs.

¶ 9 On January 6, 2010, the defendant filed a timely notice of appeal in this court. In that appeal, the defendant argued that the AUUW statute's prohibition against carrying an "uncased, loaded and immediately accessible" firearm outside one's home or place of business was unconstitutional both on its face and as applied to the defendant. The defendant argued that this portion of the statute violated the second amendment right to bear arms in light of the United States Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), which recognized that the second amendment of the United States Constitution protects the right of citizens to bear arms for self-defense. The defendant's appeal also asked us to reexamine our supreme court's holding in *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483 (1984), which held that a village ordinance prohibiting the possession of handguns did not violate the Illinois Constitution.

¶ 10 In a decision entered May 20, 2013, we affirmed the judgment of the circuit court that entered a general guilty verdict with respect to all four charged AUUW counts. *People v. Grant*, 2013 IL App (1st) 100174-U. With respect to the defendant's argument that the AUUW statute was unconstitutional as applied to him, we held that this challenge was not subject to our review as the defendant had not raised the issue before the trial court. With respect to the defendant's facial challenge to the statutory provision on carrying "uncased, loaded and

immediately accessible" firearms, we noted that a facial constitutional challenge must establish that no set of circumstances exists under which the statute would be valid. We concluded that the defendant had not met this standard, since the statutory provision at issue had only restricted the *manner* in which firearms could be carried rather than prohibiting them altogether. Moreover, we noted that our court had repeatedly held that the AUUW statute was constitutional. We also declined to reexamine the Illinois Supreme Court's decision in *Kalodimos*, recognizing that we lacked the authority to overrule decisions of our supreme court.

¶ 11    The defendant subsequently petitioned for rehearing. Pending that petition, the Illinois Supreme Court issued its decision in *People v. Aguilar*, 2013 IL 112116. In *Aguilar*, the court determined that section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute, in prohibiting possession of an "uncased, loaded and immediately accessible" firearm outside the home, violated the second amendment of the United States Constitution as construed by the United States Supreme Court's decisions in *Heller* and *McDonald*. Our supreme court agreed with the reasoning of the Seventh Circuit in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), in "concluding that the second amendment protects the right to possess and use a firearm for self-defense outside the home." *Aguilar*, 2013 IL 112116, ¶ 21. Since section 24-1.6(a)(1), (a)(3)(A) "categorically prohibit[ed] the possession and use of an operable firearm for self-defense outside the home," our supreme court concluded that it "amount[ed] to a wholesale statutory ban on the exercise of a personal right that is specifically named in and guaranteed by the United States Constitution, as construed by the United States Supreme Court." *Id.* Thus, the *Aguilar* decision held that the section of the AUUW statute underlying count I against the defendant was unconstitutional. However, the supreme court emphasized that its holding was "specifically limited to the Class 4 form of AUUW, as set forth in section 24-1.6(a)(1), (a)(3)(A), (d)" but made no finding "with respect to the constitutionality or unconstitutionality of any other section or subsection of the AUUW statute." *Id.* ¶ 22 n.3.

¶ 12    On January 29, 2014, our supreme court issued a supervisory order vacating this court's May 20, 2013 judgment on the defendant's appeal and instructing us to "reconsider the matter in light of" *Aguilar* "to determine if another outcome is warranted." *People v. Grant*, No. 116216 (Ill. Jan. 29, 2014) (supervisory order). We subsequently permitted the parties to file supplemental briefing.

¶ 13    In his supplemental brief, the defendant argues that the reasoning of *Aguilar* invalidates all sections of the AUUW statute of which he was convicted, "as each is centered upon possession of an uncased, loaded, and immediately accessible firearm while not on one's own land, abode or fixed place of business." The defendant argues that "the essential reasoning of *Aguilar* is that the Second Amendment right extends outside the home, and that reasoning thus invalidates all the Class 4 charges in this case." Thus, although *Aguilar* explicitly reversed only that portion of the AUUW statute underlying count I, the defendant contends that all of the sections under which he was charged have been rendered unconstitutional.

¶ 14    The defendant further argues that, apart from count I's unconstitutionality under *Aguilar*, there was insufficient evidence to convict him on the three remaining alleged violations of the AUUW statute. Specifically, the defendant argues the State did not present sufficient evidence that he had not been issued a valid FOID card to support counts II and IV. Although conceding he did not have a FOID card on his person when he was arrested, the defendant contends there was no proof that he had not been *issued* a card as required to prove a violation of section 24-1.6(a)(1), (a)(3)(C) or (a)(2), (a)(3)(C) of the AUUW statute. Moreover, the defendant

argues that his admission to not having a FOID card is insufficient to convict, relying on the principle that there must be corroborating evidence independent of a defendant's confession to establish the commission, or "*corpus delicti*," of the offense. Separately, the defendant argues there was insufficient evidence that he carried a firearm on a "public street" as required under section 24-1.6(a)(2) to support his conviction on count III.

¶ 15    Finally, apart from his second amendment and insufficient evidence arguments, the defendant contends that the convictions under counts II and IV relating to the FOID card requirement violate the "proportionate penalties" clause of the Illinois Constitution. Specifically, he contends that, after the *Aguilar* holding, the elements comprising a violation of the AUUW statute's FOID-related provisions are now identical to the elements of a violation of the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/2 (West 2012)). The defendant claims that these crimes now consist of the same two elements, yet have different penalties, as the AUUW conviction is a felony while a FOID Card Act violation is a misdemeanor. The defendant thus argues that counts II and IV fail the "identical elements" test and violate the Illinois Constitution.

¶ 16    In its supplemental brief, the State concedes that the *Aguilar* holding invalidates the defendant's convictions under counts I and III, as both relied on the prohibition against carrying "uncased, loaded and immediately accessible" firearms in section 24-1.6(a)(3)(A) that was held unconstitutional. However, the State maintains that *Aguilar* does not affect the validity of the portion of the AUUW statute prohibiting the carrying of a firearm without a valid FOID card, section 24-1.6(a)(3)(C), which supports counts II and IV. The State also argues there was more than sufficient evidence to establish that the defendant had not been issued a valid FOID card and that he carried a firearm on a "public street" without such a card. With respect to the "proportionate penalties" challenge, the State contends that we do not have jurisdiction to consider this argument because it is outside the scope of the supreme court's supervisory order. The State alternatively argues there is no proportionate penalties violation because a conviction under the AUUW statute's FOID-related provisions requires proof of different elements than those required by the FOID Card Act. Thus, the State contends that we should affirm the defendant's convictions on both counts II and IV. The State urges that the defendant should be sentenced with respect to count IV, arguing that it is the more serious of the two offenses.

¶ 17                                    ANALYSIS

¶ 18    We first note that we have jurisdiction pursuant to the supervisory order of our supreme court issued on January 29, 2014, directing us to vacate our May 20, 2013 judgment on the defendant's initial appeal and directing us "to reconsider the matter in light of" the *Aguilar* decision "to determine if another outcome is warranted." *People v. Grant*, No. 116216 (Ill. Jan. 29, 2014) (supervisory order). We have now reconsidered the defendant's appeal in light of *Aguilar* as well as the parties' supplemental briefing.

¶ 19    We hold, as conceded by the State, that the *Aguilar* decision applies to invalidate the defendant's convictions under counts I and III for possessing a weapon that was "uncased, loaded and immediately accessible" in violation of sections 24-1.6(a)(1), (a)(3)(A) and 24-1.6(a)(2), (a)(3)(A) of the AUUW statute. In *Aguilar*, our supreme court reversed a conviction under section 24-1.6(a)(1), (a)(3)(A), the same provision underlying count I against the defendant in this case. That provision made it a felony for an individual to possess an "uncased, loaded and immediately accessible" firearm "except when on his or her land or in his

- 5 -

or her abode or fixed place of business." 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008). The supreme court relied upon the Seventh Circuit Court of Appeals' holding in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), that this portion of the statute was "effectively 'a flat ban on carrying ready-to-use guns outside the home' [citation] and that, as such, it violates the second amendment right to keep and bear arms." *Aguilar*, 2013 IL 112116, ¶ 19 (quoting *Moore*, 702 F.3d at 940). Our supreme court adopted *Moore*'s holding that "the [second] amendment confers a right to bear arms for self-defense, which is as important outside the home as inside" and thus "Illinois' flat ban on carrying ready-to-use guns outside the home, as embodied in the Class 4 form of section 24-1.6(a)(1), (a)(3)(A), (d), is unconstitutional on its face." (Internal quotation marks omitted.) *Aguilar*, 2013 IL 112116, ¶ 19.[1]

¶ 20    *Aguilar* thus expressly invalidated the specific portion of the AUUW statute that is the basis of count I against the defendant, section 24-1.6(a)(1), (a)(3)(A). We also hold, as acknowledged by the State, that count III for violation of section 24-1.6(a)(2), (a)(3)(A) is likewise invalidated by *Aguilar*. Count III, like count I, implicates the statutory language in subsection (a)(3)(A) barring possession of an "uncased, loaded and immediately accessible" firearm. The only difference between count I and count III is that whereas the first count concerns possession "on or about [one's] person or in any vehicle," the latter count applied to the carrying of firearms "upon any public street, alley, or other public lands." Thus, the statutory provision raised in count III, like the provision raised in count I, similarly amounts to a "flat ban on carrying ready-to-use guns outside the home" and thus violates the second amendment. (Internal quotation marks omitted.) *Aguilar*, 2013 IL 112116, ¶ 19. Under *Aguilar*, the AUUW statutory provisions underlying both counts I and III amount to an unconstitutional ban on firearms outside the home. Thus, we reverse the defendant's convictions on counts I and III.

¶ 21    We turn to the remaining two counts, II and IV, both of which concern the defendant's alleged lack of a valid FOID card at the time of his arrest. Count II alleged that the defendant violated section 24-1.6(a)(1), (a)(3)(C) of the AUUW statute, which makes it a crime for a person to carry a firearm outside of one's own land, abode, or fixed place of business if "the person possessing the firearm has not been issued a currently valid [FOID] card." Count IV alleges that the defendant violated section 24-1.6(a)(2), (a)(3)(C) of the AUUW statute by carrying or possessing a firearm "upon any public street, alley, or other public lands" without having been issued a valid FOID card.

¶ 22    First, we address the defendant's contention that these FOID-related provisions were invalidated by *Aguilar*. The defendant argues that "the reasoning of *Aguilar* should apply to each of the [AUUW statute's] subsections at issue in this case," including the AUUW statute's FOID provisions, as "the *raison d'être* for each is to criminalize the possession of an uncased, loaded, and immediately accessible firearm while not on one's own land, abode, or fixed place

---

[1]Notably, our supreme court emphasized that "in concluding that the second amendment protects the right to possess and use a firearm for self-defense outside the home, we are in no way saying that such a right is unlimited or is not subject to meaningful regulation." *Id.* ¶ 21. Indeed, our supreme court noted the United States Supreme Court's statement in *Heller* that the recognition of a second amendment right to self-defense did *not* " 'cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places *** or laws imposing conditions and qualifications on the commercial sale of arms.' " *Id.* ¶ 26 (quoting *Heller*, 554 U.S. at 626-27).

of business, *i.e.* outside of the home." This contention is simply incorrect. Only counts I and III involve the prohibition in section 24-1.6(a)(3)(A) on carrying an "uncased, loaded and immediately accessible" firearm that was found unconstitutional in *Aguilar*. Counts II and IV do not rely whatsoever on this invalidated provision; rather, they concern section 24-1.6(a)(3)(C)'s independent provisions regarding firearm possession by persons who have not been issued a valid FOID card. Indeed, as recognized in the defendant's reply brief, this court has already held that the FOID requirement in section 24-1.6(a)(3)(C) of the AUUW statute is severable from the *Aguilar* holding. *People v. Henderson*, 2013 IL App (1st) 113294, ¶ 22 ("we find that the invalidity of subsection (a)(3)(A) by *Aguilar* is not fatal to the balance of the statute, particularly the FOID card requirement in subsection (a)(3)(C)"). In another post-*Aguilar* decision, this court also held that subsection (a)(3)(C) does not violate the second amendment because the FOID card requirement is a reasonable restriction on firearm possession. See *People v. Taylor*, 2013 IL App (1st) 110166, ¶ 32 ("Because the restriction in section 24-1.6(a)(1), (a)(3)(C) is limited to those lacking a FOID card and is not a flat ban, we decline to extend the holding of *Aguilar* to this section of the AUUW statute."). Indeed, the FOID card requirement is consistent with *Aguilar*'s recognition that the second amendment right to possess firearms is still "subject to meaningful regulation." *Aguilar*, 2013 IL 112116, ¶ 21. We concur with the reasoning of our decisions in *Henderson* and *Taylor* and reject the defendant's contention that *Aguilar* invalidates his conviction with respect to counts II and IV.

¶ 23        Alternatively, the defendant argues that there was insufficient evidence to support the trial court's guilty findings with respect to counts II and IV. First, he contends that there was not sufficient evidence establishing that he had not been issued a currently valid FOID card at the time of his arrest. The defendant emphasizes our supreme court's holding that section 24-1.6(a)(3)(C) of the AUUW statute does not require the physical carrying of a FOID card, but only requires that a valid card has been "issued" to an individual possessing firearms. *People v. Holmes*, 241 Ill. 2d 509, 522 (2011) ("The language of the unlawful use of weapons statute only contemplates that a FOID card has been issued to that individual. There is no requirement in the unlawful use of weapons statute that an individual have his or her FOID card or other similar permit in his or her possession."). The defendant acknowledges Officer Kasper's testimony that the defendant admitted that he did not have a FOID card, but he asserts this is insufficient proof that one had not been *issued* to him.

¶ 24        The applicable standard of review is well settled. "When considering a challenge to a criminal conviction based on the sufficiency of the evidence, the relevant question on appeal is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Jackson*, 2012 IL App (1st) 092833, ¶ 22 (citing *People v. Hall*, 194 Ill. 2d 305, 329-30 (2000)). The evidence "must be considered in the light most favorable to the prosecution," which means "the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." (Internal quotation marks omitted.) *People v. Wheeler*, 226 Ill. 2d 92, 116-17 (2007). "Circumstantial evidence is sufficient to sustain a criminal conviction, provided that such evidence satisfies proof beyond a reasonable doubt of the elements of the crime charged." *People v. Hall*, 194 Ill. 2d 305, 330 (2000). A reviewing court "is not required to search out all possible explanations consistent with innocence or be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. On the contrary, we must ask, after considering all of the evidence in the light most favorable to the prosecution,

whether the *** evidence [in the record] could reasonably support a finding of guilt beyond a reasonable doubt." *Wheeler*, 226 Ill. 2d at 117-18.

¶ 25    Here, the only evidence at trial referring to whether the defendant had a FOID card was the following testimony of Officer Kasper on direct examination:

> "Q. Officer, did you ask the defendant if he had a current valid FOID card?
>
> A. Yes.
>
> Q. Did he state he had one?
>
> A. He said he did not.
>
> Q. Did he ever at any point in time present you with a current valid firearms owner identification card?
>
> A. No."

The defendant's attorney did not cross-examine Officer Kasper on this point.

¶ 26    The defendant acknowledges Officer Kasper's testimony but argues that "at most, this testimony shows that the defendant did not *have* a FOID card on his person, not that one had not been *issued* to him." (Emphases added.) We disagree with the defendant's narrow interpretation of the trial testimony. The officer's question to the defendant was clearly not limited to inquiring if the defendant literally had a FOID card *on his person*. Rather, the testimony was that Officer Kasper asked the defendant "if he had a current valid FOID card," and the defendant responded that "he did not." While the scope of this question would certainly include whether the defendant was literally carrying a FOID card, the inquiry whether the defendant "had a valid FOID card" can also be reasonably interpreted as asking whether the defendant owned or had been issued a valid FOID card, regardless of whether or not he was carrying it on his person at the time. Indeed, had the defendant in fact been issued a valid FOID card that was not on his person at that moment, it would be reasonable to infer that he would have attempted to explain this rather than simply responding that "he did not" have a valid FOID card, as Officer Kasper testified.[2] It defies common sense to accept the defendant's argument as it would suggest that he inexplicably passed up an opportunity to explain that he did in fact have a valid FOID card. This explanation made in response to Officer Kasper's question would have allowed him to extricate himself from what was, clearly, serious trouble for him. Viewing the evidence in the light most favorable to the prosecution, the trial court could reasonably interpret this testimony as evidence that the defendant had not been issued and did not possess a valid FOID card either on his person or anywhere else at the time of his arrest.

¶ 27    The defendant also argues that Officer Kasper's testimony is insufficient under the principle that a defendant may not be convicted of a crime based solely on his confession. The defendant argues that because the State failed to present evidence independent of his statements to police, the State could not have proved the commission, or *corpus delicti*, of the offense, *i.e.*, that the defendant had not been issued a valid FOID card at the time of his arrest.

---

[2]Although the defendant testified that during the arrest he asked the police if he could "go in the house to get my ID," there was no clarification at trial as to what type of "ID" the defendant allegedly referred to. In any case, the trial court as finder of fact could certainly find that Officer Kasper's testimony that the defendant admitted to not having a valid FOID card was more credible than the defendant's interpretation.

¶ 28    Our supreme court has explained that "proof of an offense requires proof of two distinct propositions or facts beyond a reasonable doubt: (1) that a crime occurred, *i.e.*, the *corpus delicti*; and (2) that the crime was committed by the person charged." *People v. Sargent*, 239 Ill. 2d 166, 183 (2010). "[P]roof of the *corpus delicti* may not rest exclusively on a defendant's extrajudicial confession, admission, or other statement. [Citation.] Where a defendant's confession is part of the proof of the *corpus delicti*, the prosecution must also adduce corroborating evidence independent of the defendant's own statement." *Id.* Although there must be some evidence "independent of the confession, tending to show the crime did occur, that evidence need not, by itself, prove the existence of the crime beyond a reasonable doubt." *Id.* Rather, "the corroborating evidence may be considered together with the confession to determine whether the crime *** ha[s] been proven beyond a reasonable doubt." *Id*.

¶ 29    Here, the defendant contends that "[the defendant's] statement to the police was the only evidence relating to a FOID" card and thus "there is insufficient proof of *corpus delicti*" for counts II and IV. We disagree and find that there was corroborating evidence apart from the defendant's admission. We note that, independent of any statement by the defendant, Officer Kasper testified that no FOID card was found on defendant's person and the defendant never presented one, even when the officer inquired whether he possessed one. Indeed, at trial the defendant did not dispute Officer Kasper's testimony that he never produced a valid FOID card, and at no time during Officer Kasper's questioning of defendant, did he ever suggest that a FOID card had in fact been issued to him. Nor did he request, as one would reasonably expect, an opportunity to retrieve and produce the card, if he in fact had one somewhere other than on his person.

¶ 30    The defendant's supplemental brief suggests that the State was required to introduce affirmative evidence that no valid FOID card had been issued despite his admission and Officer Kasper's unrebutted testimony that the defendant produced no card and none was found. The law in Illinois does not require the State to prove a negative and we decline to do so in this case. See *Henderson*, 2013 IL App (1st) 113294, ¶ 36 ("Because the trial court also found defendant guilty *** under section 24-1.6(a)(2), (a)(3)(C) *** and defendant acknowledged that he did not have a FOID card on his person at the time of the offense [citation], we remand the cause to the trial court for imposition of sentence on that count."). Considering that we are obligated to review the evidence in the light most favorable to the prosecution, the undisputed testimony that the defendant in this case failed to produce a FOID card was sufficient evidence corroborating the defendant's explicit admission that he did not have a valid FOID card. Given this evidence, a rational trier of fact could conclude beyond a reasonable doubt that the defendant had not been issued and did not have a valid FOID card at the time of his arrest.

¶ 31    Moreover, although not necessary to affirm the conviction on counts II and IV, we agree with the State that there was additional circumstantial evidence corroborating the defendant's statement to police that he did not have a current valid FOID card. Specifically, the State cites Officer Kasper's testimony that the defendant told him that he had purchased the handgun for $75 from a "crack head" three months prior to the arrest, and that the defendant confirmed this in his own courtroom testimony. The State also cites the arresting officers' testimony that the defendant turned and ran from the police as circumstantial evidence of guilt.

¶ 32    Considering that all reasonable inferences in the record must be made in the prosecution's favor, we agree with the State that the defendant's admission that he purchased the handgun from a "crack head" rather than from a licensed firearms dealer could lead to a reasonable

inference that it was unlikely that the defendant had been issued a valid FOID card, as would be necessary to complete a legitimate purchase. The illegal origin of the gun certainly could be regarded by the trier of fact as evidence corroborating the defendant's statement that he did not possess a valid FOID card when he was arrested after buying the gun from the "crack head."

¶ 33    Similarly, although the defendant disputed the police officers' recollection of events, it can be inferred that the trial court credited the testimony of Officers Kasper and Mohammad that the defendant fled when they approached. "A trier of fact may infer consciousness of guilt from evidence of a defendant's flight [from] the police." *People v. Williams*, 266 Ill. App. 3d 752, 760 (1994) (citing *People v. Nightengale*, 168 Ill. App. 3d 968, 972 (1988)); see also *People v. Hart*, 214 Ill. 2d 490, 519 (2005) ("[W]e believe defendant's flight and resistance upon apprehension constitute circumstances from which the trier of fact could infer consciousness of guilt."). The defendant's flight thus supported an inference that the defendant knew that he possessed the handgun illegally. A finder of fact could likewise infer that someone with a valid FOID card would not have reason to flee from police while carrying a handgun. Thus, we conclude there was ample evidence corroborating the defendant's out-of-court statement and reject the defendant's argument that the State could not establish the *corpus delicti* of the offense underlying counts II and IV. We likewise find that the trial court, as a rational trier of fact, could conclude beyond a reasonable doubt that the defendant had not been issued a FOID card and did not have one at the time of his arrest.

¶ 34    We briefly address the defendant's independent argument that there was insufficient evidence that he possessed the firearm on "a public street" as required to support his conviction under count IV for violating section 24-1.6(a)(2), (a)(3)(C) of the AUUW statute. At trial, the defendant testified that he was on the porch of his residence at all relevant times. However, Officer Kasper and Officer Mohammad both testified that they had observed the defendant on the sidewalk in front of the residence. The defendant emphasizes that count IV charged him with possessing a firearm "upon a public street, to wit: South Wabash" without a valid FOID card. The defendant thus contends that, even assuming the truth of the police officers' testimony, the State proved only that the defendant stood on a sidewalk, not a street.

¶ 35    We find this argument meritless, as the relevant language in section 24-1.6(a)(2) of the AUUW statute specifies that a violation occurs when one "[c]arries or possesses on or about his or her person, upon *any public street, alley, or other public lands* within the corporate limits of a city, village or incorporated town *** any pistol, revolver, stun gun or taser or other firearm." (Emphasis added.) 720 ILCS 5/24-1.6(a)(2) (West 2008). The plain language of the statute encompasses not only possession upon a "street," but on any "other public lands within the corporate limits" of a city. Officer Kasper testified he saw the defendant "standing on the public sidewalk in front of 10920 South Wabash" immediately prior to the arrest, and Officer Mohammad corroborated that testimony. As a public sidewalk certainly constitutes "public land," there was sufficient evidence for the trial court to conclude that the defendant possessed the firearm on "public lands" without a FOID card. Thus, we need not independently address whether the defendant's presence on the sidewalk also falls within the statutory term "public street." In any event, we agree with the State that it would be "absurd for the FOID requirement to be applied when one possesses a firearm on a thoroughfare and in an alley but not the sidewalks," and we will not presume the legislature intended such an illogical result.

¶ 36    We turn to the defendant's argument that a conviction under count II or IV for failure to have a valid FOID card under section 24-1.6(a)(1), (a)(3)(C) or section 24-1.6(a)(2), (a)(3)(C) of the AUUW statute would violate the proportionate penalties clause of the Illinois

- 10 -

Constitution. The defendant argues that in light of the *Aguilar* decision, the elements constituting violations of these subsections are now identical to the elements of a violation of the FOID Card Act, which prohibits a person from "acquir[ing] or possess[ing]" any firearm "without having in his or her possession a Firearm Owner's Identification Card." 430 ILCS 65/2 (West 2012). The defendant argues that the same two elements comprise a violation under either statute: "(1) possession of a firearm, and (2) lack of a currently valid FOID card." As a violation of the AUUW statute is a Class 4 felony and a violation of the FOID Card Act is a Class A misdemeanor, the defendant contends that the statutes impermissibly impose different penalties for identical conduct.

¶ 37    In response, the State first contends that we cannot consider the defendant's proportionate penalties argument because it is outside the scope of our supreme court's mandate in its supervisory order instructing us to reconsider the defendant's appeal in light of *Aguilar*. The State further argues that, assuming we can review the question, the elements underlying the AUUW violations under counts II and IV are distinguishable from those supporting a violation of the FOID Card Act.

¶ 38    First, we address whether we can consider the defendant's proportionate penalties argument, which the defendant admits he did not raise prior to the supreme court's supervisory order. That order, after directing us to vacate our original judgment on the defendant's appeal, states: "The appellate court is further directed to reconsider the matter in light of this Court's decision in *People v. Aguilar*, 2013 IL 112116, to determine if another outcome is warranted." *People v. Grant*, No. 116216 (Ill. Jan. 29, 2014) (supervisory order). The State argues that this order limits our review to the second amendment issues addressed in *Aguilar* and precludes us from considering a proportionate penalties argument. The defendant contends that this argument is subject to our review because it arises from the *Aguilar* holding. Specifically, the defendant contends that *Aguilar* effected a "substantive change" in the elements required to be proven under the FOID-related subsections of the AUUW statute. The defendant's argument is that possession of a firearm outside the home was prohibited by the AUUW statute until *Aguilar*, and thus "[p]re-*Aguilar* violations of [subsections (a)(1), (a)(3)(C) and (a)(2), (a)(3)(C)] required, in short, that a person possess a firearm: (1) while not in his abode; and (2) while not having been issued a currently valid FOID card." The defendant argues that by establishing the right to possess firearms outside the home, *Aguilar* effectively removed the "while not in his abode" element of the relevant sections of the AUUW statute and thus "the effect of the *Aguilar* decision is to eliminate as irrelevant all but two elements of the offense of AUUW: (1) possession of a firearm, and (2) lack of a currently valid FOID card." The defendant asserts that the FOID-related provisions of the AUUW statute now have "the same elements as the FOID Card Act."

¶ 39    The State argues that we lack jurisdiction to consider the defendant's argument because the supervisory order here was a "specific and unambiguous directive" to consider second amendment issues raised by *Aguilar*, but "did not open the door for defendant to raise other constitutional claims." Thus, the State avers that "[a] ruling on [the defendant's] proportionate penalties claim would be outside the scope of [our] authority and void for lack of jurisdiction." We acknowledge that our review of a case as a result of a supervisory order is limited by any instructions issued by our supreme court pursuant to the order. However, we do not find the supervisory order in this case to be as narrow as urged by the State. The order directs us to reconsider our prior ruling "in light of" *Aguilar* and to "determine if another outcome is warranted," but does not limit the scope of our review to second amendment issues raised in

- 11 -

*Aguilar* or otherwise limit the issues we may consider. Moreover, the defendant contends that his proportionate penalties challenge under the Illinois Constitution arises from the *Aguilar* decision. Thus, we conclude that we have jurisdiction to consider the defendant's proportionate penalties challenge to his convictions under counts II and IV. Nevertheless, for the reasons set forth below, we find that the defendant's argument lacks merit.

¶ 40   In assessing the merits of the defendant's challenge under the Illinois Constitution, we recognize that "statutes carry a strong presumption of constitutionality. [Citation.] To overcome this presumption, the party challenging the statute must clearly establish that it violates the constitution." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). "A reviewing court has 'a duty to construe a statute in a manner that upholds its validity and constitutionality if it reasonably can be done.' " *People v. Hawkins*, 409 Ill. App. 3d 564, 567 (2011) (quoting *People v. Graves*, 207 Ill. 2d 478, 482 (2003)).

¶ 41   The proportionate penalties clause of the Illinois Constitution "requires the legislature to set penalties 'according to the seriousness of the offense.' " *Sharpe*, 216 Ill. 2d at 522 (quoting Ill. Const. 1970, art. I, § 11). This constitutional provision "mandates that penalties be proportionate to the offenses committed." *Hawkins*, 409 Ill. App. 3d at 567. "[A] defendant may raise two types of proportionate penalties challenges: (1) a penalty violates the proportionate penalties clause if it is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community; or (2) the proportionate penalties clause is violated where offenses with identical elements are given different sentences." *People v. Lauderdale*, 2012 IL App (1st) 100939, ¶ 39 (citing *Sharpe*, 216 Ill. 2d at 521). Our supreme court has explained that applying different penalties for identical elements violates the proportionate penalties clause because "[i]f the legislature determines that the exact same elements merit two different penalties, then one of these penalties has not been set in accordance with the seriousness of the offense." *Sharpe*, 216 Ill. 2d at 522.

¶ 42   The defendant asserts that the elements comprising violations of the AUUW statutory provisions underlying counts II and IV are identical to those supporting a violation of the FOID Card Act, which provides: "No person may acquire or possess any firearm, stun gun, or taser within this State without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Department of State Police under the provision of this Act." 430 ILCS 65/2(a)(1) (West 2012). The defendant contends that violation of either statute requires proof of the same two elements: (1) possession of a firearm and (2) lack of a currently valid FOID Card. The violations of the AUUW statute at issue are Class 4 felonies, yet a FOID Card Act violation is a Class A misdemeanor pursuant to section 14(b) of the statute. The defendant thus claims the statutes impose different penalties for the same conduct.

¶ 43   The defendant's argument is invalid as it relies upon an overly simplistic view of the elements of each offense. First, the defendant's assertion that the statutes contain an identical "possession of a firearm" element is clearly erroneous upon examination of the statutory language. The misdemeanor FOID Card Act offense is committed when a person "acquire[s] or possess[es]" a firearm. 430 ILCS 65/2(a)(1) (West 2012). Notably, that subsection does not elaborate on the manner of acquisition or possession that is required for an individual to be subject to liability. For instance, the statute does not limit its application to those carrying a firearm on the person as opposed to other possible forms of "possessing" a firearm. Indeed, the disjunctive phrase "acquire or possess" indicates that the requirement to carry a FOID card applies whenever one acquires a firearm, such as through purchase from a vendor, even if an individual has not taken physical possession of the weapon.

¶ 44    In contrast, the relevant sections of the AUUW statute require more specific factual findings regarding the manner in which an individual possesses a firearm. A violation of section 24-1.6(a)(1), (a)(3)(C), the basis for count II, occurs where one who has not been issued a valid FOID card "carries" a firearm "on or about his or her person or in any vehicle or concealed on or about his or her person." Thus, to prove a violation, the State must establish that the firearm was carried or concealed *on the person* of the defendant or in a vehicle. In contrast, a misdemeanor FOID Card Act violation does not require that a firearm was ever carried by the defendant or placed in a specific location. Moreover, this section of the AUUW statute specifies that it does not apply when an individual is "on his or her land and or in his or her abode or fixed place of business." In contrast, there is no such limitation under the FOID Card Act.

¶ 45    Similarly, a violation of section 24-1.6(a)(2), (a)(3)(C), the basis for count IV, requires that one "[c]arries or possesses" a firearm "on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon *** or except when on his or her own land or in his or her own abode or fixed place of business." 720 ILCS 5/24-1.6(a)(2) (West 2008). Again, this section differs from the FOID Card Act with respect to the manner of possession as it requires proof that the defendant carried a firearm "on or about [one's] person." *Id.* No such limitation is contained in the FOID Card Act. In addition, this section of the AUUW statute applies only where the firearm was possessed "upon any public street, alley, or other public lands" within a city, village, or incorporated town. *Id.* This provision of the AUUW statute also specifies that a violation does not occur when an individual is on his or her own land, abode, or fixed place of business. The FOID Card Act contains no such geographical restrictions.

¶ 46    The statutory subsections underlying counts II and IV thus require the State to prove additional elements regarding both the manner as well as the location of firearm possession that are simply not required to establish the misdemeanor FOID Card Act violation.[3] As the FOID-related sections of the AUUW statute and the FOID Card Act do not require "identical elements" to establish criminal liability, they do not violate the proportionate penalties clause of the Illinois Constitution. The defendant's challenge to his convictions under counts II and IV thus fails.

¶ 47    Having concluded that the convictions under counts II and IV were constitutionally valid and supported by sufficient evidence, we now turn to sentencing. The trial court sentenced the defendant upon a general guilty verdict regarding all four counts, but only the convictions on counts II and IV survive in light of *Aguilar*. As the two remaining convictions were based on the same conduct, the defendant should be sentenced on the more serious of the two offenses. See *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 84 ("Under the one-act, one-count doctrine, the [defendant] should be sentenced on the most serious offense and the less serious offenses vacated."). The violations of the AUUW statute underlying counts II and IV are both Class 4

_____

[3]Moreover, the statutes also differ with respect to whether the defendant must have physical possession of the FOID card. The FOID Card Act is violated whenever an individual possesses a firearm "without having [a FOID card] in his or her possession" (430 ILCS 65/2(a)(1) (West 2012)) whereas a violation of the relevant AUUW statutory provisions occurs when "the person possessing the firearm has not been issued a currently valid [FOID card]." 720 ILCS 5/24-1.6(a)(3)(C) (West 2008). This distinction further distinguishes the elements of the offenses.

felonies and thus implicate the same sentencing range. However, the State urges that the count IV conviction for carrying a firearm on a public street without a FOID card in violation of section 24-1.6(a)(2), (a)(3)(C) is the more serious offense because "society has a significant interest in protecting the general public from individuals who unlawfully carry firearms in public places." Moreover, the defendant has stated his agreement with the State's reasoning that count IV is the more serious count.

¶ 48        Although we would otherwise remand for resentencing, this is a rare case where the State and the defendant have not only agreed as to which count is the "most serious," both have also requested that we enter judgment on that count instead of remanding to the trial court. The parties have indicated to this court their agreement that remanding for resentencing could not have any practical effect in this case and thus would not be an effective use of judicial resources. Resentencing at this point would not actually benefit the defendant, as he has already completed the term of probation originally imposed by the trial court after its general guilty verdict on all four counts. That is, even if we were to remand for resentencing in light of our order vacating the convictions on counts I and III, any new, lesser sentence imposed by the trial court would be moot in light of the probation already served. In this situation, we agree with the State and the defendant that remanding for resentencing is unnecessary and would not be an effective use of the time and resources of the parties or the court. Accordingly, for the reasons discussed we enter judgment and sentence on the count IV conviction only. The sentence imposed by the trial court shall stand.

¶ 49        For the foregoing reasons, we reverse the convictions on counts I and III but affirm the convictions on counts II and IV and enter judgment and sentence on count IV.

¶ 50        Affirmed in part and reversed in part.