2026 IL App (1st) 211422-B
No. 1-21-1422
Opinion Filed May 15, 2026

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 09924 |
| | ) | |
| QUINTON GATES, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Gamrath concurred in the judgment and opinion.

**OPINION**

¶ 1     Before imposing a sentence, the Illinois Constitution requires the trial court to weigh the seriousness of the offense against the defendant's rehabilitative potential. Quinton Gates argues trial counsel undermined that balance by asking for a juvenile-style sentence while conceding that the trial court lacked authority to sentence him below the statutory minimum. We agree that counsel erred, but on this record, Gates cannot show prejudice.

¶ 2      Consistent with *People v. Spencer*, 2025 IL 130015, the record contains no factual basis to apply the science underlying *Miller v. Alabama*, 567 U.S. 460 (2012), to Gates as an emerging adult. That claim must be litigated in postconviction proceedings. So we affirm.

¶ 3                                      Background

¶ 4      The Illinois Supreme Court recently set the framework for analyzing emerging-adult sentencing claims under the proportionate penalties clause. *Spencer*, 2025 IL 130015, ¶¶ 32-46. In doing so, it overruled part of our earlier ruling. *Id.* ¶ 40 (overruling *People v. Gates*, 2023 IL App (1st) 211422, ¶¶ 38-49). The court vacated our decision and ordered reconsideration in light of *Spencer*. *People v. Gates*, No. 130271 (Ill. Sept. 24, 2025) (supervisory order). We allowed supplemental briefing.

¶ 5      We recount the pertinent facts.

¶ 6                                         Trial

¶ 7      Sisters Tremia Gilmore and Ishonna Gilmore testified that they lived in a three-flat with siblings in territory claimed by the "Lowe Life" gang. On the evening of the shooting, they were with their cousin, a Lowe Life member, when Gates arrived and asked for him.

¶ 8      Terence Evans, who lived on the second floor, heard about seven shots, went to the rear, and saw Gates shoot the cousin twice and yell "F*** Lowe Life" before leaving.

¶ 9      Police investigators described the investigation. Detective Jeremy Morales testified that he spoke to the sisters and Evans the night of the shooting. All three identified Gates by his nickname, "Man Man." With that information, Morales assembled a photo array. The next day, at the station, the sisters and Evans identified Gates as the shooter.

¶ 10    Gates testified he knew the sisters, Evans, and the victim and had been friends until they affiliated with "Lowe Life." He ended the friendship in 2016 because he belonged to a rival gang. He denied being in Englewood on the day of the shooting.

¶ 11    The jury found Gates guilty of first degree murder and discharge of a firearm causing death. See 720 ILCS 5/9-1(a)(1) (West 2010).

¶ 12                                          Sentencing

¶ 13    At the time of sentencing, Gates had served four years, four months, and eight days.

¶ 14    In mitigation, the defense presented Gates's high school diploma (June 2020) and an e-mail confirming nine months in the "Second Chance Program" and three months in the "Becoming a Man" program. Gates did not speak in allocution or submit to a presentence investigation interview.

¶ 15    The defense memorandum described a disrupted upbringing: his mother, the family's breadwinner, died suddenly when Gates was 12; his father worked sporadically; after eviction, they moved to Englewood; and when his father was later imprisoned for a federal gun offense, Gates lived with relatives, some gang-affiliated.

¶ 16    Further losses followed. An older cousin, role model, and mentor was shot and killed by a responding police officer during a mental health episode. Soon after, a close friend was also killed. Counsel noted that Gates never received therapy or counseling after these deaths.

¶ 17    The defense urged the minimum sentence, asserting Gates "falls into the category of 'emerging youth' who, arguably, should be given similar considerations to juvenile offenders." At sentencing, the court asked, "But the statutory factors are pretty clear that somebody has to be under the age of 18 for either the firearm enhancement or for the consideration of the *Miller* factors

that were codified. Correct?" Defense counsel responded, "I think that that—sure, your Honor, is what the statute says. I think if there is any ambiguity, it must be resolved in [Gates's] favor."

¶ 18    The State presented two witnesses and the victim's mother's statement.

¶ 19    Before sentencing, the court asked both attorneys, "Do you think the firearm enhancements are mandatory for the defendant?" See 730 ILCS 5/5-4.5-105(b), (c) (West 2020). After some back-and-forth, the State said, "I believe it is not discretionary." Defense counsel replied, "I would just say if there was ambiguity, it should be resolved in Quinton's favor. I think the trend in the law has been to move away from mandatory minimums when it comes to juvenile offenders and to allow judges more discretion."

¶ 20    The court identified a base range of 20 to 60 years of imprisonment plus a 25-year firearm enhancement. *Id.* §§ 5-4.5-95(b), 5-8-1(1)(d)(iii). The trial court sentenced Gates to 48 years in prison—23 years for murder and 25 years for the enhancement. Because Gates was under 21 at the time of the offense, he would be eligible for parole after 20 years. *Id.* § 5-4.5-115(b).

¶ 21    The court noted Gates was just over 18 at the time of the offense, considered the *Miller* factors, and addressed whether the firearm enhancement was mandatory. See *Miller*, 567 U.S. at 477-78; Ill. Const. 1970, art. I, § 11; 730 ILCS 5/5-8-1 (West 2020).

¶ 22    Those factors placed the sentence toward the lower end, but the court found no evidence that Gates lacked the maturity to understand his conduct. In mitigation, the court considered the family hardships and instability, the violent deaths of extended family members and others close to him, his diploma, and program participation while incarcerated.

¶ 23    In aggravation, Gates acted alone. The court also cited jail infractions, some minor and others reflecting violence or disrespect for authority.

¶ 24    The court found the proportionate penalties clause inapplicable because Gates was the principal, not an accomplice, and concluded parole eligibility foreclosed a *de facto* life sentence.

¶ 25    On appeal, we held counsel ineffective for failing to properly raise a proportionate penalties challenge and remanded for resentencing. *Gates*, 2023 IL App (1st) 211422, ¶¶ 68-70.

¶ 26    But *Spencer* overruled our *de facto* life sentence analysis. Compare *Spencer*, 2025 IL 130015, ¶ 40, with *Gates*, 2023 IL App (1st) 211422, ¶¶ 38-49. The supreme court later directed us to "consider the effect of [its] opinion in *People v. Spencer*, 2025 IL 130015," on our analysis of trial counsel's performance: "whether *** trial counsel was ineffective for failing to argue that [Gates]'s sentence violates the proportionate penalties clause of the Illinois Constitution and determine if a different result is warranted." *Gates*, No. 130271 (Ill. Sept. 24, 2025).

¶ 27                                    Analysis

¶ 28    Gates contends that *Spencer* leaves intact his claim that trial counsel was ineffective for failing to argue the 45-year minimum, including the firearm enhancement, was unconstitutional as applied. He urges that the "interests of justice" weigh in favor of remand for a new sentencing hearing rather than postconviction proceedings.

¶ 29                              *People v. Spencer*

¶ 30    In *Spencer*, the court reviewed the constitutionality of a 100-year, aggregate sentence imposed on an emerging adult. *Spencer*, 2025 IL 130015, ¶¶ 1, 16. The 20-year-old defendant argued his *de facto* life sentence violated the proportionate penalties clause because (i) the parole statute (730 ILCS 5/5-4.5-115(b) (West 2020)) did not provide a meaningful opportunity for release before 40 years and (ii) the sentencing court failed to consider either the *Miller*-based, youth-related factors or the evolving science on emerging adults. *Spencer*, 2025 IL 130015, ¶ 23.

¶ 31 The court rejected these contentions and clarified four points. *Id.* ¶¶ 32, 40, 46. First, *Miller* applies only to juveniles, not emerging adults. *Id.* ¶ 32. Second, even a 100-year sentence is not a *de facto* life sentence if parole offers a "meaningful opportunity" for release before 40 years. *Id.* ¶ 40. Third, while *Miller* does not govern emerging adults, its underlying science may inform as-applied challenges. *Id.* ¶¶ 34, 43-44. Fourth, and dispositive here, emerging adults must first develop that science before a factfinder, not on appeal. *Id.* ¶ 45.

¶ 32                                   Supervisory Order

¶ 33 The supreme court vacated our decision directed reconsideration under *Spencer*. Before we reach the merits, we address threshold arguments.

¶ 34                                       i. Waiver

¶ 35 The State claims Gates "waived" the opportunity to "address how *Spencer* affects his *Strickland* claim" (see *Strickland v. Washington*, 466 U.S. 668 (1984)). The record shows otherwise.

¶ 36 Gates advanced two *Strickland* claims: (i) failure to challenge a *de facto* life sentence and (ii) failure to argue the 45-year minimum violated the proportionate penalties clause as applied.

¶ 37 Our prior decision accepted both. *Gates*, 2023 IL App (1st) 211422, ¶¶ 68-70. In the supplemental briefing, Gates concedes the first fails after *Spencer* but insists on the second: "As *Spencer* makes clear, the fact that Gates'[s] sentence is not a *de facto* life sentence in no way prohibits him from raising an as-applied proportionate penalties challenge at a new sentencing hearing. *** [T]rial counsel was ineffective for not advocating for a lesser sentence under the proportionate penalties clause[.]"

¶ 38    The State's waiver argument collapses Gates's two claims into one claim dependent on a *de facto* life sentence and labels Gates's focus in the supplemental briefing on trial counsel's failure to advocate for a lesser sentence as a "new claim" that "puzzlingly" contains "no substantive argument." The State concludes we should find Gates's claim "waived" and "barred as a new claim."

¶ 39    But Gates's original claim faulted trial counsel's concession at sentencing that the court could not impose a sentence below the statutory minimum. ("Defense counsel agreed that the firearm enhancement was mandatory.") He invoked *People v. Miller*, 202 Ill. 2d 328 (2002) (*Leon Miller*), for the court's authority to depart from a mandatory minimum when unconstitutional as applied. ("[The] Supreme Court [in *Leon Miller*] upheld the trial court's imposition of a sentence below what was mandated by statute where the mandatory sentence violated the proportionate penalties clause ***.")

¶ 40    To be sure, the State's waiver argument is no model of clarity, as it also appears to distinguish between *advocating for a lesser sentence* and *advocating for a sentence below the statutory minimum*. At one point, the State insists: "There is no reason that defendant could not also have argued in the alternative [in the original briefing] that counsel also was ineffective for failing to 'advocate for a lesser sentence,' *** assuming that he was not subject to a *de facto* life term." At another, the State allows: "The only 'issue' before the Illinois Supreme Court, and consequently the only 'issue' for this Court's consideration on remand *per* the supervisory order, was whether counsel, post-*Spencer*, can be deemed ineffective for failing to challenge the Code of Corrections' 45-year 'mandatory minimum' term and the imposition of a *de facto* life sentence under the proportionate penalties clause."

- 7 -

¶ 41    Gates's focus on his counsel's failure to advocate for a lesser sentence, one below the statutory minimum, is an issue he raised before and which we decided in his favor. The issue is neither "barred as *** new" nor "waived," so we reconsider it.

¶ 42                                ii. Jurisdiction

¶ 43    The State also asserts that Gates's claim "contradicts" the terms of the supervisory order and "triggers an important jurisdictional concern." None exists.

¶ 44    The supervisory order directs us to "consider the effect of [its] opinion in *People v. Spencer*, 2025 IL 130015," on our analysis of trial counsel's performance: "whether *** trial counsel was ineffective for failing to argue that [Gates]'s sentence violates the proportionate penalties clause of the Illinois Constitution and determine if a different result is warranted." *Gates*, No. 130271 (Ill. Sept. 24, 2025). Gates's claim fits squarely within that directive. We have the authority and the obligation to decide it. See *People v. Grant*, 2014 IL App (1st) 100174-B, ¶ 39 (observing, "our review of a case as a result of a supervisory order is limited by any instructions issued by our supreme court pursuant to the order").

¶ 45                              Ineffective Assistance

¶ 46    The right to counsel includes the right to effective counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims that counsel failed to protect this right arise under *Strickland*, 466 U.S. 668.

¶ 47    To prevail, Gates must show that (i) counsel erred and (ii) the error prejudiced him. *People v. Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland*, 466 U.S. at 687). Counsel errs by litigating in an "objectively unreasonable" way "under prevailing professional norms." *Id.* (citing *Strickland*, 466 U.S. at 694). Error prejudices the defendant when "there is a 'reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). Review is *de novo*. *People v. Berrier*, 362 Ill. App. 3d 1153, 1167 (2006).

¶ 48                                   i. Error

¶ 49    Gates maintains that trial counsel erred by conceding that the statutory minimum applied. Generally, trial counsel must observe "prevailing professional norms." *Strickland*, 466 U.S. at 687-89. Those norms do not shield a misapprehension of the law. *People v. Wright*, 111 Ill. 2d 18, 30-31 (1986) (finding misapprehension of intoxication defense failed to satisfy objective standard of reasonable competence).

¶ 50    At sentencing, trial counsel erred by conceding that the trial court could not impose a sentence below the statutory minimum. See *Spencer*, 2025 IL 130015, ¶¶ 34, 43-44. "The Illinois Constitution does not limit a proportionate penalties challenge to just juveniles or individuals with life sentences." *People v. Hilliard*, 2023 IL 128186, ¶ 29. Nor is it confined to those convicted as accomplices. See *People v. Fuller*, 187 Ill. 2d 1, 11 (1999) (analyzing claim of defendant charged as principal); *Leon Miller*, 202 Ill. 2d at 342 (analyzing claim of defendant charged as accomplice). As Gates observes, the supreme court has repeatedly reminded emerging adults that they have always had "the essential legal tools" to raise challenges under the proportionate penalties clause to sentences of any length. (Internal quotation marks omitted.) *People v. Moore*, 2023 IL 126461, ¶ 42.

¶ 51    Further, trial counsel's sentencing memo reveals confusion over the law. See *People v. Wiley*, 205 Ill. 2d 212, 237 (2001) (rejecting claim that counsel made "legitimate strategic decision" when failing to present additional mitigating evidence). The sentencing memo noted

Gates's age of 2 months over 18, yet it cited only *Miller*, 567 U.S. 460, to support "consideration [of Gates's] age and immaturity as factors in mitigation." But *Miller* applies to juveniles only. *Spencer*, 2025 IL 130015, ¶ 32.

¶ 52    Just as critical, courts may not presume that the science underlying *Miller* applies to emerging adults. See *id.* ¶ 45 (holding that emerging adults must first litigate before factfinder application of science underlying *Miller*). "The law has not yet reached the juncture where neuroscience compels recognition of the claims of emerging adults in the same manner as the claims of juveniles." *People v. Brewer*, 2025 IL App (1st) 240088, ¶ 42. Indeed, our supreme court has long declined to resolve the sentencing claims of emerging adults on a record containing "nothing about how that science applies to the circumstances of [the] case." *People v. Thompson*, 2015 IL 118151, ¶ 38.

¶ 53    For these reasons, we reject the State's assertion that trial counsel properly (i) "attempted to secure the lowest possible sentence consistent with the Code of Corrections" (ii) while asking the court to consider the *Miller* factors. We also reject the State's assertion that "arguments in favor of mercy" may be "tantamount" to litigating an as-applied claim under the proportionate penalties clause. See *Spencer*, 2025 IL 130015, ¶ 45 (noting "as-applied constitutional claims cannot ultimately succeed absent a sufficiently developed evidentiary record").

¶ 54    The State contends that trial counsel raised a "novel" or "untested" claim under the proportionate penalties clause. Not so. The law is well settled that sentencing courts have the power to impose a sentence below the statutory minimum but only when justified by the facts. See *id.* ¶ 42 ("The mandate set forth in article I, section 11, [of the Illinois Constitution] provides a check on the judiciary, *i.e.*, the individual sentencing judge, as well as the legislature, which sets the

statutory penalties."). Trial counsel erred, however, by asking the court to sentence Gates like a juvenile, while conceding that the court lacked power to impose a sentence below the statutory minimum and offering no factual basis for finding that the science underlying *Miller* applied to Gates.

¶ 55                                                    ii. Prejudice

¶ 56    That leaves prejudice. Gates contends the "record contains evidence suggesting that a proportionate penalties challenge could be successful." Generally, *Strickland* requires a defendant to "affirmatively prove" that prejudice resulted from counsel's errors. *Strickland*, 466 U.S. at 693; *People v. Patterson*, 2014 IL 115102, ¶ 81 ("Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced.").

¶ 57    The record includes biographical mitigation. But overlooked is, in Gates's words, "the requisite science" and its application to Gates. See *Strickland*, 466 U.S. at 693. As *Spencer* instructs, emerging adults must first litigate the application of that science before a factfinder, not on appeal. *Spencer*, 2025 IL 130015, ¶ 45. On this record, we cannot determine whether the requisite science supports Gates's claim. See *People v. Veach*, 2017 IL 120649, ¶ 47 (noting petitioners do not forfeit ineffective assistance claims that depend on facts not in record).

¶ 58    The requisite science might also support an as-applied claim under the proportionate penalties clause. *Spencer*, 2025 IL 130015, ¶ 45 (directing emerging adult to litigate in postconviction proceedings as-applied claim under proportionate penalties clause). "All as-applied constitutional challenges are, by definition, reliant on the application of the law to the specific facts and circumstances alleged by the challenger." (Internal quotation marks omitted.) *Id.* ¶ 44.

¶ 59    As-applied claims like Gates's depend on specific facts about habits and character (*Leon Miller*, 202 Ill. 2d at 342 (presuming "habits and characters" of juveniles are "unformed and unsettled" (internal quotation marks omitted))) and the application of science underlying *Miller* to those facts (*Spencer*, 2025 IL 130015, ¶ 43 (noting defendant may challenge sentence of any length)). Only a developed record permits a court to assess whether a sentence is cruel, degrading, or so grossly disproportionate as to shock the moral sense of the community. See generally *Fuller*, 187 Ill. 2d at 10-11 (outlining three types of challenges under proportionate penalties clause).

¶ 60    The constitution entrusts sentencing to the trial court's informed discretion. Here, counsel's errors did not produce a record that allows us to find prejudice.

¶ 61    Affirmed.

*People v. Gates*, **2026 IL App (1st) 211422-B**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-09924; the Hon. Charles P. Burns, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Peter Sgro, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Erin K. Slattery, and David H. Iskowich, Assistant State's Attorneys, of counsel), for the People. |