2 Ill. App.3d 892 (1971)
270 N.E.2d 126
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
JAMES EARL McCLOSKEY, Defendant-Appellee.
No. 70-190.
Illinois Appellate Court  Second District.
Original Opinion, May 24, 1971.
Supplemental Opinion, September 14, 1971.
Additional Supplemental Opinion, December 21, 1971.
*893 E. Roger Horsky and Ralph Ruebner, of Defender Project, of Elgin, for appellant.
William Ketcham, State's Attorney, of Geneva, (W. Ben Morgan, and Leo Wotan, Jr., Assistant State's Attorneys, of Elgin, of counsel,) for the People.
Judgment reversed.

ORIGINAL OPINION
Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:
Defendant was convicted of the possession and sale of narcotics. On appeal, he contends that (1) the court erred in refusing to permit him to elicit a witness' place of residence on cross-examination; (2) certain testimony was admitted without a proper admonishment to the jury; (3) the court improperly refused defendant's entrapment instruction; (4) the court permitted the prosecutor to make a prejudicial statement in his closing argument; (5) the court failed to instruct the jury on the mental state required for conviction; and (6) the sentence imposed is excessive and tantamount to cruel and unusual punishment.
Three Illinois Bureau of Investigation agents and an Aurora policeman conducted a controlled purchase of marijuana from defendant. One agent drove an unmarked automobile to defendant's place of employment. There, the agent, who used the name "Steve" and who was shabbily dressed and wearing a goatee, met a man named Dormer from whom he had previously purchased narcotics. This man was unaware of "Steve's" identity. Defendant, who was unknown to the agent, then arrived. Dormer refused to introduce the two. All three left in the agent's car and drove to a supermarket parking lot where the agent gave Dormer $50 in pre-recorded funds. Dormer added $10 of his own and handed the money to defendant who left the vehicle, disappeared from sight, and returned shortly with two bags of marijuana. The agent complained that he had not received $50 worth of the narcotic; defendant agreed, again left the automobile and came back with more marijuana. The three returned to the factory and separated.
The other two IBI agents and the Aurora policeman had followed the *894 undercover agent to the factory. When "Steve", Dormer, and defendant left the factory to obtain the marijuana, one IBI agent and the Aurora policeman followed. The other IBI agent, Pariser, remained near the factory. Agent Pariser's only other connection with the case was that he witnessed the serial numbers of the pre-recorded money which was never recovered.
During its case-in-chief, the State introduced the testimony of the three IBI agents and the Aurora policeman, Agent Pariser being the last to testify. The defendant did not cross-examine the Aurora policeman or the IBI agent who followed the defendant to the parking lot where the transaction took place. He did examine the IBI agent who made the purchase, but at no time did he request his home address. When Pariser was offered for examination, he was asked to spell his last name, his first name, whether it was his real name and then he was asked his residence address. The State's objection to the last question was sustained. Defendant moved for a mistrial based upon Smith v. Illinois (1968), 390 U.S. 129, 19 L.Ed.2d 956, 88 S.Ct. 748, and People v. Gonzales (1970), 120 Ill. App.2d 406; app. den. 43 Ill.2d 397. This motion was denied.
Without the presence of the jury, the State attempted to make a record concerning the personal safety of Pariser. Suffice to say that the record on this point was insufficient and will not be considered in determination of the appeal.
Defendant's first contention is based upon the Smith case. There the Court, at pp. 130-131, stated:
"* * * [O]nly this witness and the petitioner testified to the crucial events inside the restaurant, and the petitioner's version of those events was entirely different. The only real question at the trial, therefore, was the relative credibility of the petitioner and this prosecution witness. * * *
In the present case there was not, to be sure, a complete denial of all right of cross-examination. But the petitioner was denied the right to ask the principal prosecution witness either his name or where he lived, although the witness admitted that the name he had first given was false. Yet when the credibility of a witness is in issue, the very starting point in `exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself."
Subsequent Federal and Illinois cases have considered Smith. In United States v. Teller (7th Cir.1969), 412 F.2d 374, 380, the witness, *895 Washington, during cross-examination, was asked "his present address"; the government objected and the objection was sustained by the court. On appeal, defense argued that failure to give the present address was a flagrant abuse of his right to cross-examination, even though the witness testified that he was staying at a motel at the government's expense at the time of trial. He further testified to where he lived 4 months before trial, to all of his past history on the use of narcotics, to living with a woman and to burglary and arson convictions. The court said:
"* * * We think that neither Alford v. United States, 282 U.S. 687, 75 L.Ed. 624, 51 S.Ct. 218 nor Smith v. Illinois, 390 U.S. 129, 19 L.Ed.2d 956, 88 S.Ct. 748 * * * requires a reversal of this conviction. Smith does not per se require a new trial merely because the district court sustained an objection to a question seeking to elicit Washington's address. Smith requires a reversal only where the lack of a witness's name and address denies the defendant an opportunity to effectively cross-examine a witness. When this happens, a defendant is denied his Sixth Amendment right to confrontation. However, the initial question is whether the defendant was denied effective cross-examination. It is clear from the recital of Washington's testimony that the district court did not unduly limit cross-examination of Washington's past record."
Similarly, United States v. Lawler (7th Cir.1969), 413 F.2d 622, 627; United States v. Lee (7th Cir.1969), 413 F.2d 910, 915; and United States v. Marti, (2d Cir.1970), 421 F.2d 1263, 1265-1266, interpret Smith as requiring reversal where there is a prejudicial denial of effective cross-examination of a witness whose credibility is in question.
The crux of Smith was the informer's credibility versus defendant's. In the case at bar, the contribution of agent Pariser's testimony was minute. Pariser remained at the plant and saw absolutely no part of the sale. The prerecorded money he witnessed was apparently not recovered and not introduced at the trial. In this light, we find no prejudicial denial of effective cross-examination of a witness whose credibility is in issue.
There is no merit to defendant's argument that evidence of subsequent offenses was admitted without the jury having been admonished that such evidence could only be considered for the purpose of identifying defendant. We do not deem it to be of value to reproduce verbatim the purportedly objectionable testimony; it is sufficient to say that in the various instances, either no reference was made to criminal conduct, no objection was made by defendant, or, upon objection, the testimony was stricken.
Defendant's contention that the tendered instruction on entrapment should have been given is also without merit. Instructions are properly given on very slight evidence regarding a theory. (People v. Kalpak *896 (1957), 10 Ill.2d 411, 425.) Entrapment arises when the defendant commits a crime which he would not have committed, but for the actions of the authorities. The intent that a crime be committed must arise in the mind of the police, not the accused. It is proper for the police to provide opportunity for the crime to be committed and to use artifice to catch the criminal. People v. Outten (1958), 13 Ill.2d 21, 23-24.
We find this case barren of evidence of entrapment. Dormer, the go between, had no idea "Steve" was an undercover agent; "Steve" had never met or heard of defendant; there was no testimony of Dormer's conversation with defendant; and, finally, defendant readily took part in the crime, returned for more marijuana and exhibited a working knowledge of the narcotics trade. The sole indication of entrapment was the self-serving statement of defendant that, on previous occasions, Dormer had asked for narcotics for a man named Steve. This statement, without any connection to the agent, does not constitute "very slight evidence."
Defendant claims that the following statement, made without objection by defense counsel, requires reversal:
"You heard his [defendant's] testimony on the witness stand that he didn't know  he didn't know where he got this marijuana, that he had his sunglasses on. I submit to you that we witnessed perjury today in that statement made by that defendant from that chair right there."
Defendant cites People v. Weinstein (1966), 35 Ill.2d 467; People v. Provo (1951), 409 Ill. 63; People v. Hopkins (1970), 124 Ill. App.2d 415; and American Bar Association, Standards Relating to the Prosecution Function and the Defense Function, Sec. 5.8 (Tentative Draft March, 1970), which hold that comments on the falsity of the testimony are unprofessional conduct. According to defendant, these are authorities for the proposition that this quoted statement was an error of a nature requiring reversal even though no objection was made in the trial court.
While the standard referred to above, with which we agree, holds that such a remark is improper, under Illinois law no reversible error was made. In People v. Weaver (1959), 18 Ill.2d 108, the prosecutor said, "[L]adies and gentlemen, on that testimony of John Alfred Weaver I have never heard such lying in all my life." In People v. Zayas (1968), 102 Ill. App.2d 166, the State's Attorney argued, "the only thing that I can understand is how it could be so diametrically opposed is that the defendant is completely perjuring himself and made up the whole story." In both cases the court found the remarks not to be prejudicial. Accordingly, here, we conclude no reversible error occurred. See also, People v. Sinclair (1963), 27 Ill.2d 505; People v. Winstead (1967), 90 Ill. App.2d 167.
*897 In a supplemental brief, identical to the one filed in People v. Keating, Gen. No. 70-189, ante at ___, defense counsel contends error in the omission of the element of knowledge from any of the instructions. This point was not raised at any time in the trial court. Additionally, during closing argument counsel admitted defendant's guilt in the possession of marijuana. Therefore, we adopt in toto, our remarks on this point set forth in Keating, filed this date.
Finally, defendant contends that his 10 to 25 year sentence is excessive and tantamount to cruel and unusual punishment. A sentence within the maximum and minimum set by the legislature cannot be considered cruel and unusual. People v. Calcaterra (1966), 33 Ill.2d 541, 548, cert. denied, 385 U.S. 7, 17 L.Ed.2d 8, 87 S.Ct. 65 concerns a maximum sentence and People v. Gonzales (1963), 25 Ill. 235, cert. denied, 372 U.S. 932, 9 L.Ed.2d 728, 83 S.Ct. 740, relates to the minimum sentence prescribed for the offense herein.
In appropriate cases, this court is empowered to reduce the sentence imposed by the trial court. Herein, the defendant, 19 years old and single, was shown to be familiar with crime, yet after hearings in aggravation and mitigation, the State's Attorney recommended a term of 10 years to 10 years and a day. While the trial court need not heed such recommendation, this court will take the same into consideration, along with the facts of the case, when contemplating a reduction of sentence.
We are of the opinion that in this instance, justice will best be served by reducing defendant's maximum sentence to 15 years.
Judgment affirmed as modified.
SEIDENFELD and GUILD, JJ., concur.

SUPPLEMENTAL OPINION ON REHEARING
Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:
The defendant, after filing of the original opinion herein, filed a petition for rehearing which was denied by this Court. Thereafter, before the issuance of a mandate and before the expiration of the time allowed for a petition to appeal to the Supreme Court, a motion for reconsideration of our denial was filed upon which oral arguments were had. Subsequently, we vacated the order denying the petition for rehearing.
The basis for the motion is that on August 16, 1971, House Bill No. 788, as amended, entitled the "Cannabis Control Act," was enacted into law by the Governor. On the same date, House Bill No. 787, as amended, entitled "Illinois Controlled Substance Act," was also enacted *898 into law by the Governor's signature. By this latter Act, the "Uniform Narcotic Drug Act," under which the defendant herein was convicted, was repealed and replaced by the above referred to enactment, the Cannabis Control Act.
Section 18 of the Act provides:
"Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by this Act. If the offense being prosecuted would be a violation of this Act, and has not reached the sentencing stage or a final adjudication, then for purposes of penalty the penalties under this Act apply if they are less than under the prior law upon which the prosecution was commenced." (Emphasis added.)
Under the new Act, the sale of 26.4 grams of marijuana (of which the defendant was guilty) is punishable, on the first conviction, by imprisonment in a penal institution other than the penitentiary for not more than one year or in the penitentiary for a period from one to three years. Section 5(c).
During oral argument, the State claimed that the denial of the petition for rehearing is a final adjudication within the meaning of section 18 and further that this Court was without jurisdiction to reconsider such denial.
When does this Court lose jurisdiction to consider a matter before it?
A trial court, under ordinary circumstances, loses jurisdiction of a final order entered upon the passing of 30 days (Ill. Rev. Stat. 1969, ch. 110, pars. 50(5), 68.1(3), 68.3(1); Pape v. Dept. of Revenue, (1968), 40 Ill.2d 442, 449; Chicago Rawhide Mfg. Co. v. Industrial Com. (1966), 35 Ill.2d 595, 597); however, within that 30 days it retains the inherent power to vacate any of its judgments upon good cause shown. Trojan v. Marquette Nat. Bank (1967), 88 Ill. App.2d 428, 436.
We are of the opinion that a reviewing court in Illinois is divested of jurisdiction in a cause before it when its mandate issues to a lower court (thereby restoring jurisdiction in that court) or when a petition for leave to appeal from the appellate court to the Illinois Supreme Court has been allowed or when a petition for a leave to appeal or certiorari to the United States Supreme Court has been granted (thereby passing jurisdiction to the higher court). At the time of filing of the motion herein, this Court's mandate had not issued and the time for filing a petition for leave to appeal had not expired. We therefore conclude that we have jurisdiction to entertain the motion presented.
When, generally, does a judgment become a final adjudication?
There are many cases defining what constitutes a final judgment for *899 the purposes of appeal, but our research has not disclosed an Illinois case which squarely passes upon our specific inquiry here involved.
In Rubin v. Kohn (1931), 344 Ill. 166, 172, the Court employed language appropriate here when it stated:
"The affirmance of the decree by the Appellate Court and the denial by this court of a writ of certiorari for a further review of the record made the decree a final adjudication of the rights of the parties."
See also, 2760 Milwaukee Ave. Bldg. Corp. v. Hosiery Co. (1938), 298 Ill. App. 151, 159.
Under the circumstances here involved, we conclude that from the viewpoint of the court rendering its decision the judgment becomes a final adjudication when that court loses jurisdiction to alter such judgment and, from the viewpoint of the parties involved, the judgment becomes a final adjudication when their rights of appeal have been exhausted. We therefore hold that in absence of the issuance of our mandate or leave to appeal having been granted our original denial of the petition for rehearing was not a final adjudication affecting defendant's motion for relief under the new enactment.
His motion alternatively requests this Court to reduce his sentence to a term of 1-3 years, grant him probation or order his immediate release.
Section 1.01 of the Act entitled "Construction of Statutes" (Ill. Rev. Stat. 1969, ch. 131, par. 1, et seq.) provides that all general provisions, terms, phrases and expressions of an enactment shall be liberally construed so that the true intent and meaning of the General Assembly may be carried out. Section 4 provides:
"No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty * * * incurred, * * * save only that the proceedings thereafter shall conform, so far as practicable to the laws in force at the time of such proceedings. If any penalty, * * * or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect * * *"
We are cognizant of the Supreme Court's decision in People v. Hansen (1963), 28 Ill.2d 322, 340-341, wherein one of the defendants was sentenced by the trial court 13 days prior to the effective date of the newly revised Criminal Code. The penalty imposed was greater than provided under the new statute. While the review was pending, and more than 30 days after sentence was pronounced, the defendant moved the trial court for a reduction of sentence within the limits of the new enactment *900 but the motion was denied. The claim was pursued on appeal and the court held at p. 341:
"Judgment and sentence here were pronounced prior to the effective date of the new Code, which incorporates by reference section 4 of the Statutory Construction Act, (citations omitted) which provides that a punishment mitigated by a new law is applicable only to judgments after the new law takes effect * * *"
However, we distinguish that case because: the phrase, "* * * or a final adjudication," found in section 18 of the Act involved was not found in the then-new statute being considered by the Court in the Hansen case, and because the present Act does not incorporate section 4 of the Statutory Construction Act.
The word "prosecution," used three times within section 18, is statutorily defined (Ill. Rev. Stat. 1969, ch. 38, par. 2-16) as follows:
"* * * legal proceedings by which a person's liability for an offense is determined, commencing with a return of the indictment or the issuance of the information, and including the final disposition of the case upon appeal."
In United States v. Schooner Peggy (1801), 1 Cranch 103, 110, 2 L.Ed. 49, 51 Chief Justice Marshall stated:
"It is in the general true that the province of an appellate court is only to inquire whether a judgment when rendered was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. * * * In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside."
See also, Linkletter v. Walker (1965), 381 U.S. 618, 627, 14 L.Ed.2d 601, 607, 85 S.Ct. 1731 and cases therein cited; Hughes v. Illinois Public Aid Com. (1954), 2 Ill.2d 374, 378-379; People v. Ryan (1917), 281 Ill. 231, 232 and People v. Gunn (1917), 281 Ill. 244, 245-246.
We are not here called upon to apply judicial retroactivity; rather we conclude that legislative retroactivity was intended by the specific, disjunctive use of the words, "or a final adjudication," found in Section 18 of the Cannabis Control Act and is meant to apply to a case in review which has not reached final adjudication as defined herein. We hold that the defendant may avail himself of the mitigating provisions of the penalties provided. See, People v. Carleton (1969), 116 Ill. App.2d 450, 453-454. Also, State v. Zornes (1970), Wash. 469 P.2d 552.
Because the penalties under the new enactment vary depending upon *901 the amount of cannabis involved and the record herein is incomplete with relation to aggravating and mitigating circumstances surrounding the offense, we deem it appropriate for the trial court to consider and pass upon the relief requested by the defendant's motion filed herein.
Under present appellate procedure, a minimum of seven months passes between the time a notice of appeal is filed and the cause is placed on the calendar for oral argument. Since the defendant has already served 21 months in the penitentiary, we deem it essential to depart from normal procedures. Therefore we adhere to our original opinion in so far as affirming the judgment of conviction but remand the case and direct that, within 15 days of the filing of this supplemental opinion, the defendant be brought before the trial court and a hearing be had upon the motion and objections thereto (which are hereby transferred); and further, that within 15 days of conclusion of said hearing, the trial court is to certify to this court the evidence taken, together with the judgment entered.
Judgment affirmed in part; cause remanded with directions.
This court retains jurisdiction for further review, if necessary.
SEIDENFELD and GUILD, JJ., concur.

ADDITIONAL SUPPLEMENTAL OPINION
Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:
The conviction in this case was affirmed and the matter remanded for the trial court to conduct a hearing (under the provisions of the "Cannabis Control Act") and report its findings to this Court.
In view, however, of People v. McCabe, Gen. No. 42674, filed October 15, 1971, rehearing denied November 24, 1971, 49 Ill.2d 338 (1971); and People v. Hudson, Gen. No. 43994, filed November 30, 1971, 50 Ill.2d 1, there is no necessity for a hearing under the "Cannabis Control Act."
The judgment of the trial court is therefore reversed.
Judgment reversed.
SEIDENFELD and GUILD, JJ., concur.