NOTICE

Decision filed 07/07/20. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2020 IL App (5th) 150500

NO. 5-15-0500

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-CF-87 |
| | ) | |
| KEELAN BAXTON, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court, with opinion.
Justices Moore and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1     The defendant, Keelan Baxton, was convicted of aggravated unlawful use of a weapon (AUUW) based on misdemeanor possession of cannabis (720 ILCS 5/24-1.6(a)(1), (a)(3)(E) (West 2014)). He was sentenced to 30 months of probation under the election-of-treatment provisions set forth in section 40-10 of the Alcoholism and Other Drug Abuse and Dependency Act (20 ILCS 301/40-10 (West 2014)). On appeal, he contends that section 24-1.6(a)(1), (a)(3)(E) of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(E) (West 2014)) is facially unconstitutional because it violates the second amendment (U.S. Const., amend. II) and that the statute is unconstitutional as

applied to him. He further challenges various fines and assessments that were imposed by the circuit clerk but were not ordered by the circuit court.[1] For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3      The facts are not in dispute here. On January 23, 2015, the defendant was pulled over for speeding. During the traffic stop, the officer smelled cannabis and asked the defendant about it. The defendant informed the officer that he had in his possession a small amount of cannabis and a handgun. The officer arrested the defendant and retrieved from his pockets a loaded, silver .22-caliber revolver and a baggie containing 0.2 grams of cannabis. Thereafter, on January 27, 2015, the defendant was charged with AUUW, a Class 4 felony, for possessing a firearm while committing a misdemeanor violation of the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 2014)). 720 ILCS 5/24-1.6(a)(1), (a)(3)(E) (West 2014). At the time of the offense in January 2015, section 4(a) of the Cannabis Control Act made possession of "not more than 2.5 grams of any substance containing cannabis" a Class C misdemeanor. 720 ILCS 550/4(a) (West 2014).

¶ 4      On September 1, 2015, the defendant filed a motion to dismiss the AUUW charge, arguing that section 24-1.6(a)(1), (a)(3)(E) was unconstitutional on the basis that it violated the second amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. The defendant cited *People v. Aguilar*, 2013 IL 112116, ¶¶ 21-22, in which our supreme court struck down a different section of an older version of the AUUW statute, section 24-1.6(a)(1), (a)(3)(A), (d), as facially unconstitutional under the second amendment. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008). The *Aguilar* court concluded that section of the AUUW statute categorically prohibited the possession and use of an operable firearm for self-defense

_____

[1]The defendant later withdrew this argument in accordance with Illinois Supreme Court Rule 472(a)(1) (eff. Mar. 1, 2019), which provides that, in criminal cases, a circuit court retains jurisdiction, including during the pendency of an appeal, to correct errors in the imposition or calculation of fines, fees, assessments, or costs.

outside of the home by prohibiting the carrying, on one's person or in one's vehicle, a firearm that was uncased, loaded, and immediately accessible. *Aguilar*, 2013 IL 112116, ¶ 1. The defendant here argued that, like the restriction in *Aguilar*, section 24-1.6(a)(1), (a)(3)(E) was an unreasonable restriction on the exercise of a constitutional right, *i.e.*, the right to bear arms, because it inflated the constitutionally protected right into a felony offense when combined with an "unrelated, petty offense."

¶ 5 On September 4, 2015, the trial court denied the defendant's motion to dismiss following a hearing. The case then proceeded to a stipulated bench trial, which was held on September 15, 2015. At the bench trial, the parties stipulated that the defendant was pulled over for speeding by Jeffrey Jensen, a detective with the Belleville Police Department, and was found in possession of a small baggie containing 0.2 grams of cannabis and a loaded handgun. The court subsequently found the defendant guilty of the Class 4 felony of AUUW because he possessed a loaded handgun at a time when he also possessed cannabis, a controlled substance.

¶ 6 On September 15, 2015, the defendant filed a posttrial motion, again challenging the constitutionality of section 24-1.6(a)(1), (a)(3)(E). Thereafter, the trial court denied his motion and sentenced him to 30 months of probation under the election-of-treatment provisions of section 40-10 of the Alcoholism and Other Drug Abuse and Dependency Act (20 ILCS 301/40-10 (West 2014)), which required him to attend an intensive outpatient treatment program or be subject to the entry of a conviction. The court added a "special condition of probation" that he attend eight Wednesday morning sessions of drug court as an observer. The court also imposed a $250 DNA fee and a $25 monthly probation fee. The circuit court then included a number of additional assessments in the fines and fees sheet. On November 16, 2015, the defendant appealed, arguing

3

that section 24-1.6(a)(1), (a)(3)(E) is facially unconstitutional as it violates the second amendment and that the statute is unconstitutional as applied to him.

¶ 7    In July 2016, after the defendant filed his notice of appeal, the General Assembly enacted Public Act 99-697 (eff. July 29, 2016) (amending 720 ILCS 550/4(a)), which changed the classification of the offense from a Class C misdemeanor to a civil law violation. Also during the pendency of this appeal, the General Assembly enacted Public Act 101-27 (eff. June 25, 2019) (adding 410 ILCS 705/10-5), which legalized the possession of marijuana as follows, in pertinent part:

> "(a) Beginning January 1, 2020, notwithstanding any other provision of law, and except as otherwise provided in this Act, the following acts are not a violation of this Act and shall not be a criminal or civil offense under State law or the ordinances of any unit of local government of this State or be a basis for seizure or forfeiture of assets under State law for persons other than natural individuals under 21 years of age:
>
> > (1) possession, consumption, use, purchase, obtaining, or transporting an amount of cannabis for personal use that does not exceed the possession limit[2] under Section 10-10 or otherwise in accordance with the requirements of this Act[.]"

Section 4 of the Cannabis Control Act was also amended to state as follows:

---

[2]Section 10-10(a) of the Cannabis Regulation and Tax Act sets forth the following possession limits for a person who is 21 years of age or older and a State of Illinois resident: 30 grams of cannabis flower, no more than 500 milligrams of THC contained in cannabis-infused product, 5 grams of cannabis concentrate, and for registered qualifying patients, any cannabis produced by cannabis plants grown under subsection (b) of section 10-5, provided any amount of cannabis produced in excess of 30 grams of raw cannabis or its equivalent must remain secured within the residence or residential property in which it was grown. Pub. Act 101-27 (eff. June 25, 2019) (adding 410 ILCS 705/10-10(a)).

"Except as otherwise provided in the Cannabis Regulation and Tax Act and the Industrial Hemp Act, it is unlawful for any person knowingly to possess cannabis.

Any person who violates this Section with respect to:

(a) not more than 10 grams of any substance containing cannabis is guilty of a civil law violation ***." Pub. Act 101-593 (eff. Dec. 4, 2019) (amending 720 ILCS 550/4(a)).

¶ 8 After the parties filed their appellate briefs, this court, on its own motion, ordered the parties to prepare supplemental briefs addressing the impact, if any, the passage of the Cannabis Regulation and Tax Act (Pub. Act 101-27 (eff. June 25, 2019) (adding 410 ILCS 705/1-1 *et seq.*) had on the arguments of the parties or the issues on appeal. The parties complied and have submitted the requested supplemental briefs.

¶ 9                                II. ANALYSIS

¶ 10 The defendant first argues that section 24-1.6(a)(1), (a)(3)(E) is facially unconstitutional as it violates the second amendment and that the statute is unconstitutional as applied to him. Statutes are presumed constitutional. *People v. Lake*, 2015 IL App (4th) 130072, ¶ 48. A party challenging the constitutionality of a statute carries a heavy burden of successfully rebutting this strong presumption. *Id.* Courts have a duty to construe the statute in a manner that upholds its constitutionality whenever reasonably possible, resolving any doubts in favor of the statute's validity. *Id.*; *Aguilar*, 2013 IL 112116, ¶ 15. Moreover, it is a long-standing principle that a statute is facially unconstitutional only where no set of circumstances exists for which it would be valid. *People v. Burns*, 2015 IL 117387, ¶ 26. We review *de novo* a challenge to the constitutionality of a statute. *Aguilar*, 2013 IL 112116, ¶ 15.

¶ 11                          A. Relevant AUUW Statute

¶ 12     Section 24-1.6 of the AUUW statute in effect at the time of the defendant's January 2015

offense provided, in pertinent part, as follows:

"(a) A person commits the offense of aggravated unlawful use of a weapon when

he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on

or about his or her person except when on his or her land or in his or her abode,

legal dwelling, or fixed place of business, or on the land or in the legal dwelling of

another person as an invitee with that person's permission, any pistol, revolver, stun

gun or taser or other firearm; or

(2) Carries or possesses on or about his or her person, upon any public

street, alley, or other public lands within the corporate limits of a city, village or

incorporated town, except when an invitee thereon or therein, for the purpose of the

display of such weapon or the lawful commerce in weapons, or except when on his

or her own land or in his or her own abode, legal dwelling, or fixed place of

business, or on the land or in the legal dwelling of another person as an invitee with

that person's permission, any pistol, revolver, stun gun or taser or other firearm;

and

(3) One of the following factors is present:

* * *

(E) the person possessing the weapon was engaged in a

misdemeanor violation of the Cannabis Control Act, in a misdemeanor

violation of the Illinois Controlled Substances Act, or in a misdemeanor

6

violation of the Methamphetamine Control and Community Protection Act[.]" 720 ILCS 5/24-1.6(a)(1), (a)(2), (a)(3)(E) (West 2014).

Subsection (d)(1) of the AUUW statute set forth the following sentencing scheme:

"(d) Sentence.

(1) Aggravated unlawful use of a weapon is a Class 4 felony; a second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years." *Id.* § 24-1.6(d)(1).

¶ 13    B. Relevant Case Law Analyzing the Facial Constitutionality of Different Provisions of the

AUUW Statute

¶ 14    In *Aguilar*, our supreme court concluded that a different provision of an older AUUW statute, section 24-1.6(a)(1), (a)(3)(A), (d), violated the second amendment because it was an absolute ban on the possession and use of an operable firearm for self-defense outside of the home. *Aguilar*, 2013 IL 112116, ¶ 21. There, the relevant provision of the AUUW statute made it a Class 4 felony for an individual, who had no prior felony conviction, to possess an "uncased, loaded and immediately accessible" firearm "except when on his or her land or in his or her abode or fixed place of business" (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)). *Aguilar*, 2013 IL 112116, ¶ 15. In determining that this was unconstitutional, the supreme court relied on *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012), which held that this portion of the statute was "effectively a flat ban on carrying ready-to-use guns outside the home" and, as such, it violated the second amendment's right to keep and bear arms. (Internal quotation marks omitted.) *Aguilar*, 2013 IL 112116, ¶ 19. Nevertheless, the court made clear that "in concluding that the second amendment protects the right to possess and use a firearm for self-defense outside the home, we are in no way

7

saying that such a right is unlimited or is not subject to meaningful regulation." *Id.* ¶ 21. Also, the court limited its holding to the Class 4 form of the AUUW statute and did not invalidate any other section or subsection of the statute. *Id.* ¶ 22 n.3.

¶ 15    Thereafter, in *People v. Grant*, 2014 IL App (1st) 100174-B, ¶¶ 1, 8, a defendant was charged with other subsections of the AUUW statute, subsections (a)(1), (a)(3)(C); (a)(2), (a)(3)(C), which prohibited (1) the carrying of a firearm while not on his land, abode, or place of business without a Firearm Owner's Identification (FOID) Card (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2008)) and (2) the carrying of a firearm on a public street without a FOID card (*id.* § 24-1.6(a)(2), (a)(3)(C)). Relying on *Aguilar*, defendant challenged the constitutionality of the FOID card-related provisions. *Grant*, 2014 IL App (1st) 100174-B, ¶ 22. Noting that the FOID card requirement in subsection (a)(3)(C) of the AUUW statute was severable from the provision invalidated in *Aguilar*, the court concluded that the FOID card provision did not violate the second amendment because it was a reasonable restriction on firearm possession. *Id.* Instead, the court found that the FOID card requirement was consistent with *Aguilar*'s recognition that the second amendment's right to possess firearms was still subject to meaningful regulation. *Id.*

¶ 16    Then, in *People v. Mosley*, 2015 IL 115872, ¶ 25, the supreme court extended *Aguilar*'s finding of facial unconstitutionality to another portion of the AUUW statute, section 24-1.6(a)(2), (a)(3)(A) (720 ILCS 5/24-1.6(a)(2), (a)(3)(A) (West 2012)), which prohibited the carrying of an uncased, loaded, and immediately accessible firearm on a public way. In that case, the court reiterated that the second amendment protected an individual's right to carry a ready-to-use firearm outside of the home, subject to certain restrictions, and determined that if an individual could not be barred from carrying a ready-to-use firearm while in a vehicle or concealed on his person, then it was logical that the same conduct should not be barred when the alleged offender similarly

8

carried a firearm on a public way. *Mosley*, 2015 IL 115872, ¶ 25. The court further found that the remaining factors in subsection (a)(3) could stand independently of subsection (a)(3)(A), which was only one of several factors that operated in conjunction with subsections (a)(1) or (a)(2) to comprise the AUUW offense. *Id.* ¶ 31.

¶ 17   Our supreme court later clarified its holding in *Aguilar*, which expressly limited the holding of facial invalidity to a "so-called 'Class 4 form' of the offense," in *Burns*, 2015 IL 117387, ¶ 22. There, defendant was convicted of violating section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)). *Burns*, 2015 IL 117387, ¶ 1. At sentencing, pursuant to the sentencing provision of the AUUW statute, the State presented proof of defendant's previous felony conviction to enhance the offense classification from a Class 4 felony to a Class 2 felony. *Id.* ¶ 13. Defendant argued that his AUUW conviction of the Class 2 form of the offense must be reversed pursuant to *Aguilar*, which found the Class 4 form of the same offense unconstitutional. *Id.* ¶ 20. Our supreme court agreed and found that section 24-1.6(a)(1), (a)(3)(A) was unconstitutional without limitation because it did not include as an element of the offense the fact that the offender had a prior felony conviction. *Id.* ¶¶ 25, 29. In doing so, the court noted that the legislature could constitutionally prohibit felons from carrying readily accessible guns outside the home because that prohibition would be limited to a particular subset of persons, *i.e.*, felons; however, in this particular provision of the AUUW statute, the prior felony conviction was not an element of the offense but a sentencing factor that enhanced the penalty from a Class 4 felony to a Class 2 felony. *Id.* ¶ 29.

¶ 18   Here, the defendant was convicted of a different subsection of the AUUW statute, (a)(1), (a)(3)(E). Section 24-1.6(a)(1), (a)(3)(E) of the AUUW statute provides that a person commits the offense of AUUW when he simultaneously carries a firearm on his person when not on his land or

9

in his own abode or fixed place of business and was engaged in a misdemeanor violation of the Cannabis Control Act (720 ILCS 5/24-1.6(a)(1), (a)(3)(E) (West 2014)).

¶ 19                                     C. The *Wilson* Test

¶ 20     Our supreme court has adopted a two-part test when analyzing the constitutionality of a restriction on the right to bear arms. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 41. First, the court should conduct a textual and historical inquiry to determine whether the challenged law imposes a burden on conduct that was understood to be within the scope of the second amendment's protection at the time of ratification. *Id.* The regulated activity is categorically unprotected if the challenged law applies to conduct falling outside the scope of the second amendment right. *Id.* However, if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected, then the court, applying the appropriate level of scrutiny, looks at the strength of the government's justification for restricting or regulating the second amendment rights. *Id.* ¶ 42.

¶ 21     In determining whether the regulated activity infringes on second amendment rights, the court "must first examine whether that conduct is at the core of the right to bear arms." *Mosley*, 2015 IL 115872, ¶ 35. In *People v. Henderson*, 2013 IL App (1st) 113294, ¶ 30, the First District concluded that the possession of handguns by those under the age of 21 was not core conduct subject to second amendment protections. In so deciding, the court noted that the supreme court in *Aguilar* expressly agreed with the conclusion reached in various cases, which had undertaken a comprehensive historical examination of presumptively lawful regulatory measures, that held the laws proscribing the carriage of firearms in sensitive places, such as schools and government buildings, and possession of handguns by minors was conduct that fell outside the second amendment's core protection. *Id.*

10

¶ 22    Similarly, in *People v. Taylor*, 2013 IL App (1st) 110166, ¶ 31, the appellate court addressed the issue of whether the FOID card requirement of a previous version of the AUUW statute regulated activity falling outside the scope of the second amendment right as it was understood at the time of the amendment's adoption. In making its decision, the court discussed *Moore*, 702 F.3d at 940, which acknowledged that a state law restricting an individual's second amendment right to bear arms may prevail when guns are forbidden to a class of people who present a higher than average risk of misusing a gun. *Taylor*, 2013 IL App (1st) 110166, ¶ 31. The *Taylor* court found that the FOID card provision of the AUUW statute was such a law; it sought to prevent persons who failed to obtain a FOID card, which was the state's method to prevent those who presented a higher than average risk of misusing a gun, such as minors, felons, or the mentally ill, from legally carrying one in public places. *Id.* Further, because the FOID card restriction was limited to those lacking a FOID card and was not a flat ban, the court declined to extend the *Aguilar* holding to this particular section of the AUUW statute. *Id.* ¶ 32. Thus, the court found that under the "text, history, and tradition" approach, section 24-1.6(a)(1), (a)(3)(C) of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2006)) survived defendant's constitutional attack as it was facially constitutional. (Internal quotation marks omitted.) *Taylor*, 2013 IL App (1st) 110166, ¶ 32.

¶ 23    In addition, our supreme court in *Mosley*, applying the *Wilson* test, concluded that a FOID card requirement on the possession of a firearm while outside one's home or on a public way under subsection (a)(3)(C) of the AUUW statute fell outside the scope of the second amendment's protections. *Mosley*, 2015 IL 115872, ¶¶ 34-36. There, defendant contended that subsection (a)(3)(C) of the AUUW statute, which imposed a FOID card requirement, unconstitutionally disarmed young adults who were 18 to 20 years old because they were prohibited from obtaining

11

a FOID card. *Id.* ¶ 33. The court, relying on the reasoning of *Henderson*, concluded that the FOID card requirement of subsection (a)(3)(C) was consistent with "this court's recognition that the second amendment right to possess firearms [was] still subject to meaningful regulation." (Internal quotation marks omitted.) *Id.* ¶ 36. Because the court concluded that this conduct fell outside the scope of the second amendment's protections and passed the first part of the *Wilson* test, it was not required to undertake the second half of the analysis. *Id.*

¶ 24    Like the ban in *Grant* and *Taylor*, subsection (a)(1), (a)(3)(E) of the AUUW statute is not a comprehensive ban on possessing and carrying a firearm outside of the home. Instead, this subsection only affects a certain class of people, *i.e.*, those who simultaneously carry/possess a firearm and a controlled substance as defined in the Cannabis Control Act, the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 2018)), or the Methamphetamine Control and Community Protection Act (720 ILCS 646/1 *et seq.* (West 2018)). The class of people restricted by this provision are already engaged in illegal activity (they are currently breaking the law by possessing a controlled substance), and the restriction is only in place for the length of time that they are engaged in that illegal activity. As soon as the person terminates possession of the controlled substance, this section of the AUUW statute no longer applies to them. As previously noted, "the second amendment right to possess firearms is still subject to meaningful regulation." (Internal quotation marks omitted.) *Mosley*, 2015 IL 115872, ¶ 36.

¶ 25    Moreover, section 24-1.6(a)(1), (a)(3)(E) is the state's method to prevent individuals who present a higher than average risk of misusing a gun from carrying a gun while simultaneously possessing a controlled substance. Justice Kennedy stated the following with regard to the simultaneous possession of a firearm and a controlled substance:

"Quite apart from the pernicious effects on the individual who consumes [controlled substances], such [substances] relate to crime in at least three ways: (1) A [controlled substance] user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A [controlled substance] user may commit crime in order to obtain money to buy [those substances]; and (3) A violent crime may occur as part of the [controlled substance] business or culture. [Citation.] Studies bear out these possibilities and demonstrate a direct nexus between [controlled substances] and crimes of violence." *Harmelin v. Michigan*, 501 U.S. 957, 1002-03 (1991) (Kennedy, J., concurring in part and concurring in the judgment, joined by O'Connor and Souter, JJ.).

¶ 26    Also, "when a [controlled substance] user chooses to carry [those substances] out into public with a firearm, there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender." *United States v. Regans*, 125 F.3d 685, 687 (8th Cir. 1997).

¶ 27    This subsection of the AUUW statute is limited to a particular subset of persons and restricts conduct that falls outside of the second amendment's protections (the simultaneous possession of a controlled substance and a firearm); thus, we decline to extend the *Aguilar* holding to this particular case. Because this conduct falls outside the scope of the second amendment protections and passes the first part of the *Wilson* test, we are not required to analyze the second part of the test. We, therefore, find that section 24-1.6(a)(1), (a)(3)(E) of the AUUW statute is not facially unconstitutional.

¶ 28                    D. As-Applied Constitutional Challenge

¶ 29    The defendant next argues that section 24-1.6(a)(1), (a)(3)(E) of the AUUW statute is unconstitutional as applied to him because he only possessed a small amount of cannabis (0.2 grams), which would otherwise have been treated as a Class C misdemeanor (under the law as it

13

existed at that time). He contends that this minor offense was elevated to a felony because he also happened to possess a gun for purposes of self-defense. An as-applied constitutional challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party. *People v. Thompson*, 2015 IL 118151, ¶ 36. The facts surrounding defendant's particular case are only relevant to an as-applied challenge. *Id.* ¶ 37.

¶ 30    Although we recognize that the defendant possessed a relatively small amount of cannabis, section 4 of the Cannabis Control Act in effect at that time made possession of *any* amount of cannabis unlawful. See 720 ILCS 550/4(a) (West 2014) (possession of not more than 2.5 grams of any substance containing cannabis is a Class C misdemeanor). Neither section 4 of the Cannabis Control Act nor the AUUW statute provides an exception for an individual who only possesses a small amount of cannabis. Instead, the prohibition was against the simultaneous possession of a firearm and cannabis, a controlled substance under the Cannabis Control Act, in any amount. Thus, we have to reject his as-applied constitutional challenge.

¶ 31     E. Impact of the 2016 Amendment to the Cannabis Control Act on the Defendant's Case

¶ 32    In his supplemental brief, the defendant contends that his AUUW conviction must be vacated because AUUW can no longer be predicated on the misdemeanor possession of cannabis. The defendant points to the amendment of section 4(a) of the Cannabis Control Act, which changed the offense from a misdemeanor to a civil violation,[3] and argues that this court is obligated to apply the law in force at the time of the direct appeal.

¶ 33    In support, the defendant cites *People v. McCloskey*, 2 Ill. App. 3d 892 (1971) (supplemental opinion on rehearing). There, the court analyzed the then-recently enacted Cannabis

---

[3]The defendant contends that this alteration was made in conjunction with the recently enacted Cannabis Regulation and Tax Act. However, we note that the amendment was made in 2016.

Control Act on defendant's conviction for possession and sale of narcotics to determine whether the new law applied to him; the act under which defendant was convicted was repealed and replaced by the Cannabis Control Act. *Id.* at 897-98. Section 18 of the Cannabis Control Act provided as follows:

> "Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by this Act. If the offense being prosecuted would be a violation of this Act, and has not reached the sentencing stage or a final adjudication, then for purposes of penalty the penalties under this Act apply if they are less than under the prior law upon which the prosecution was commenced." Ill. Rev. Stat. 1971, ch. 56½, ¶ 718.

¶ 34 In determining that the new law applied to defendant on appeal, the appellate court stated as follows:

> "We are not here called upon to apply judicial retroactivity; rather we conclude that legislative retroactivity was intended by the specific, disjunctive use of the words, 'or a final adjudication,' found in Section 18 of the Cannabis Control Act and is meant to apply to a case in review which has not reached final adjudication as defined herein. We hold that the defendant may avail himself of the mitigating provisions of the penalties provided."
> *McCloskey*, 2 Ill. App. 3d at 900.

Thus, the *McCloskey* court held that the change in the law was a mitigating factor and that defendant could take advantage of the change in the law. *Id.*

¶ 35 In the present case, the State contends that the defendant's conviction based on the law that existed at the time of the offense must stand. In support, the State cites to the general savings clause contained in section 4 of the Statute on Statutes, which provides as follows:

15

"No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act." 5 ILCS 70/4 (West 2018).

¶ 36    The supreme court clarified that section 4 of the Statute on Statutes is a general savings clause for substantive changes to statutes. *People v. Gancarz*, 228 Ill. 2d 312, 322 (2008); see also *People v. Glisson*, 202 Ill. 2d 499, 507 (2002) (under section 4 of the general savings claims, retroactive application of amendments or repeals in criminal statutes is permissible only if such changes are procedural in nature; retroactive application of a substantive change is barred by section 4). In *Gancarz*, the court held that the statutory amendment, which removed parts of the reckless homicide statute and added and amended parts of the aggravated driving under the influence statute, made substantive changes to the reckless homicide statute and was not merely a mitigation of the sentence for reckless homicide. *Gancarz*, 228 Ill. 2d at 322-23. Accordingly, the court determined that defendant was not entitled to elect to be sentenced under the reckless homicide statute as it existed at the time of his sentencing, and the trial court had properly

16

sentenced him under the reckless homicide statute as it existed at the time of the offense. *Id.* at 323.

¶ 37    Similarly, in *People v. Fisher*, 135 Ill. App. 3d 502, 508 (1985), the appellate court noted that the general savings clause applied only to amendments that mitigate the punishment for an offense and not to amendments that change the nature or elements of an offense. The court held that an amendment that changed the classification of an offense from a Class 1 felony to a Class 2 felony substantively changed the nature of the offense with which defendant was charged and, thus, the amendment did not apply retroactively. *Id.*

¶ 38    Here, the 2016 statutory amendment reclassifying the offense identified in section 4(a) of the Cannabis Control Act from a misdemeanor to a civil law violation was likewise a substantive change. Thus, like *Fisher*, we find that the amendment does not retroactively apply to the defendant.

¶ 39                                III. CONCLUSION

¶ 40    For the foregoing reasons the judgment of the circuit court of St. Clair County is hereby affirmed.


¶ 41    Affirmed.

17

2020 IL App (5th) 150500

NO. 5-15-0500

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-CF-87 |
| | ) | |
| KEELAN BAXTON, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judge, presiding. |

**Opinion Filed:** July 7, 2020

**Justices:** Honorable Thomas M. Welch, P.J.

Honorable James R. Moore, J., and
Honorable David K. Overstreet, J.,
Concur

**Attorneys for Appellant**

James E. Chadd, State Appellate Defender, Catherine K. Hart, Deputy Defender, Janieen R. Tarrance, Assistant Appellate Defender, Office of the State Appellate Defender, Fourth Judicial District, 400 West Monroe Street, Suite 303, Springfield, IL 62704

**Attorneys for Appellee**

James A. Gomric, St. Clair County State's Attorney, St. Clair County Courthouse, Belleville, IL 62221; Patrick Delfino, Director, David J. Robinson, Chief Deputy Director, Luke McNeill, Staff Attorney, State's Attorneys Appellate Prosecutor, 725 South Second Street, Springfield, IL 62704